# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP385-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Mary K. Biester, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>      Complainant,<br>   v.<br>Mary K. Biester,<br>      Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST BIESTER

| | |
|---|---|
| OPINION FILED: | October 22, 2013 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP385-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Mary K. Biester, Attorney at Law:**

**Office of Lawyer Regulation,**

      Complainant,

  v.

**Mary K. Biester,**

      Respondent.

**FILED**

**OCT 22, 2013**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review the report filed by the referee, Dennis J. Flynn, recommending the court suspend Attorney Mary K. Biester's license to practice law in Wisconsin for one year for 30 counts of professional misconduct. No appeal has been filed so we review the referee's report and

recommendation pursuant to SCR 22.17(2).[1] Upon careful review of the matter, we adopt the referee's findings of fact and conclusions of law. We agree that Attorney Biester's professional misconduct warrants a one-year suspension of her license to practice law. We also find it appropriate to order her to make restitution and to successfully complete 20 hours of continuing legal education (CLE) ethics courses. We further find it appropriate to require her to pay the full costs of this proceeding, which were $25,584.50 as of April 1, 2013.

¶2 Attorney Biester was admitted to the practice of law in Wisconsin in 1979 and practices in Beloit. She has no prior disciplinary history.

¶3 On February 23, 2012, the Office of Lawyer Regulation (OLR) filed a complaint against Attorney Biester alleging 16 counts of misconduct. An amended complaint alleging 31 counts of misconduct was filed on August 15, 2012. Attorney Biester filed an answer to the amended complaint on September 18, 2012. On December 18, 2012, the referee granted Attorney Biester's motion for a stay of proceedings as to Count Two of the amended complaint.

---

[1] SCR 22.17(2) states as follows:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

¶4 The final hearing in this matter took place on February 18, 2013. At that time, the parties presented the referee with a written stipulation and no contest plea agreement whereby Attorney Biester withdrew her answer to the amended complaint and pled no contest to Counts One and Three through Thirty-One of the OLR's amended complaint. Attorney Biester agreed that the referee could use the allegations of the amended complaint as an adequate factual basis in the record for a determination of misconduct as to those counts. The parties jointly recommended the referee determine that an appropriate sanction would be a one-year suspension of Attorney Biester's license to practice law in Wisconsin. The parties agreed that if the referee's order staying proceedings relating to Count Two of the amended complaint was no longer in effect, the OLR was free to continue the prosecution of Count Two and seek an appropriate sanction and restitution. The parties also agreed that any additional sanction relating to Count Two should run consecutive to any sanctions imposed as a result of the stipulation and should commence on the day following the last day of the sanction imposed in the instant matter.

¶5 The referee concluded that the OLR had met its burden of proof on the 30 counts to which Attorney Biester pled no contest. The referee agreed that a one-year suspension was an appropriate sanction. The referee also recommended that Attorney Biester make restitution in the amount of $900 to one client, that she be ordered to successfully complete 20 hours of CLE ethics courses, and that she pay the full costs of this

proceeding. Rather than detail the extensive allegations and findings in this matter, we will instead briefly summarize the six client matters that gave rise to Attorney Biester's misconduct.

Matter of L.T. (Counts One and Three through Seven)

¶6 L.T. hired Attorney Biester to represent her in a divorce case in the summer of 2008. Attorney Biester's nonlawyer assistant, J.M., had L.T. write a $3,500 check to J.M. for attorney fees. J.M. cashed the check without depositing it in Attorney Biester's trust account.

¶7 Attorney Biester was experiencing financial problems. She filed a chapter 7 bankruptcy proceeding and her home was the subject of a foreclosure action. L.T. inherited a large sum of money. Attorney Biester advised L.T. she should protect those funds from her husband. In February 2009 J.M. convinced L.T. to transfer $78,000 of her inherited funds into Attorney Biester's client trust account for safekeeping. Attorney Biester wire-transferred over $70,000 from her client trust account to the bank that held the first mortgage on Attorney Biester's home. Attorney Biester never notified L.T. of the receipt of L.T.'s funds, nor did she deliver any of those funds to L.T. or provide L.T. with a full accounting. The OLR's investigative audit of Attorney Biester's trust account showed numerous trust account violations.

Matter of L.R. (Counts Eight through Eleven)

¶8 In July of 2009, L.R. hired Attorney Biester to represent her in a divorce case. During the pendency of the

4

matter $3,886 was forwarded to Attorney Biester, which represented L.R.'s half of a tax refund. Although L.R. repeatedly contacted Attorney Biester in the fall of 2009 about the status of the case, Attorney Biester never responded. L.R. then decided to represent herself and asked Attorney Biester to return the case file and the $3,886. In October 2009 Attorney Biester informed L.R. that police had seized L.R.'s divorce file since it was part of an investigation by the OLR into the actions of an employee at Attorney Biester's law firm.

Matter of J.F. (Counts Twelve through Sixteen)

¶9 J.F. retained Attorney Biester to represent her in a bankruptcy matter in July 2010. J.F. paid a $750 retainer. There was no written retainer agreement and no receipt was given to J.F. Attorney Biester requested additional money to handle the matter, and J.F. paid another $150. Attorney Biester never deposited the funds into any client account, and no funds were set aside to pay the bankruptcy filing fee. Attorney Biester filed a chapter 7 voluntary bankruptcy petition on behalf of J.F. in December 2010 and filed a request for a waiver of the filing fee. The waiver of filing fees was denied but options were given for installment payments. Attorney Biester never informed J.F. about the bankruptcy court's fee waiver decision. The filing fee was never paid, and in April 2011 the bankruptcy court entered an order dismissing the petition for failure to pay the filing fee. Attorney Biester never informed J.F. about the dismissal.

Matter of J.H. and D.H. (Counts Seventeen through Twenty-Four)

¶10 In April 2007 J.H. and D.H. retained Attorney Biester to represent them in a potential medical malpractice claim. A contingent retainer agreement was signed calling for Attorney Biester to receive one-third of any amount recovered. In addition, J.H. and D.H. paid $1,500 for anticipated costs. The $1,500 check was deposited into Attorney Biester's client trust account.

¶11 J.H. and D.H. made multiple trips to Attorney Biester's office to discuss the case, but Attorney Biester was never there. Attorney Biester failed to file any malpractice lawsuit or otherwise advance the claim before the expiration of the statute of limitations.

¶12 J.M. was authorized as Attorney Biester's nonlawyer assistant to perform client services to J.H. and D.H. Attorney Biester failed to make reasonable efforts to ensure that J.M. was compatible with Attorney Biester's professional obligations. J.M. took client files and paperwork to her home or other locations and failed to return them to Attorney Biester's law office. J.H. and D.H. eventually terminated their representation by Attorney Biester and requested the return of their case file materials. Attorney Biester failed to comply.

Matter of J.M. (Counts Twenty-Five through Thirty)

¶13 J.M., Attorney Biester's nonlawyer assistant, hired Attorney Biester in early July 2007 relating to a financial matter regarding a loan on a pickup truck with J.S. J.M. and J.S. signed an agreement whereby J.S. would pay J.M. $7,900 for a pickup truck, and J.M. agreed to accept the $7,900 as full and

6

final payment for the truck. J.M. also agreed to release the title to the truck. J.S.'s sister loaned him the $7,900. That sum was wire-deposited to Attorney Biester's client trust account. Attorney Biester did not notify J.M. of her receipt of the money. The OLR's audit of Attorney Biester's client trust account revealed that Attorney Biester used the funds belonging to J.M. by making disbursements to herself for $5,400 and paying $400 in office rent. During the course of the representation, J.M. was associated with the Biester Law Office and engaged in conduct that was incompatible with the professional obligations of Attorney Biester, including having Attorney Biester's business and client trust account checkbooks at her home. The checkbooks were seized by police in the execution of a search warrant of J.M.'s home.

Matter of M.W. (Count Thirty-One)

¶14 M.W. hired Attorney Biester to represent her in custody and paternity matters. She tried without success to contact Attorney Biester regarding the status of her case. M.W. verbally filed a grievance with the OLR. The OLR sent Attorney Biester several letters but Attorney Biester did not respond. Attorney Biester did finally respond after this court issued an order to show cause why her license should not be temporarily suspended for failing to cooperate in the investigation.

¶15 The referee concluded that Attorney Biester committed the misconduct alleged in Counts One and Three through Thirty-One of the amended complaint. That misconduct consisted of:

7

One violation of SCR 20:1.2(a);[2] three violations of SCR 20:1.3;[3] one violation of SCR 20:1.4(a)(2);[4] three violations of SCR 20:1.4(a)(3);[5] two violations of SCR 20:1.4(a)(4);[6] one violation of SCR 20:1.4(b);[7] one violation of SCR 20:1.6;[8] four

---

[2] SCR 20:1.2(a) states as follows:

Subject to pars. (c) and (d), a lawyer shall abide by a client's decisions concerning the objectives of representation and, as required by SCR 20:1.4, shall consult with the client as to the means by which they are to be pursued. A lawyer may take such action on behalf of the client as is impliedly authorized to carry out the representation. A lawyer shall abide by a client's decision whether to settle a matter. In a criminal case or any proceeding that could result in deprivation of liberty, the lawyer shall abide by the client's decision, after consultation with the lawyer, as to a plea to be entered, whether to waive jury trial and whether the client will testify.

[3] SCR 20:1.3 provides that "[a] lawyer shall act with reasonable diligence and promptness in representing a client."

[4] SCR 20:1.4(a)(2) states a lawyer shall "reasonably consult with the client about the means by which the client's objectives are to be accomplished; . . . ."

[5] SCR 20:1.4(a)(3) states a lawyer shall "keep the client reasonably informed about the status of the matter; . . . ."

[6] SCR 20:1.4(a)(4) provides that a lawyer shall "promptly comply with reasonable requests by the client for information; . . . ."

[7] SCR 20:1.4(b) states as follows: "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation."

[8] SCR 20:1.6 states, in pertinent part: "(a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in pars. (b) and (c)."

violations of SCR 20:1.15(b)(1);[9] two violations of SCR 20:1.15(b)(4);[10] one violation of SCRs 20:1.15(d)(1) and (2);[11] three violations of SCR 20:1.15(f)(1)e.;[12] two violations

---

[9] SCR 20:1.15(b)(1) states:

Separate account. A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[10] SCR 20:1.15(b)(4) states:

Unearned fees and cost advances. Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[11] SCR 20:1.15(d)(1) and (2) state:

(1) Notice and disbursement. Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

(2) Accounting. Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property.

[12] SCR 20:1.15(f)(1)e. states:

of SCR 20:1.15(e)(4)a.;[13] one violation of SCR 20:1.15(e)(4)c.;[14] one violation of SCR 20:1.16(d);[15] one violation of SCR

---

(1) Draft accounts.  Complete records of a trust account that is a draft account shall include a transaction register; individual client ledgers for IOLTA accounts and other pooled trust accounts; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports, subject to all of the following:  . . .

e. Disbursement records.

1. Checks.  Checks shall be pre-printed and pre-numbered.  The name and address of the lawyer or law firm, and the name of the account shall be printed in the upper left corner of the check.  Trust account checks shall include the words "Client Account," or "Trust Account," or words of similar import in the account name.  Each check disbursed from the trust account shall identify the client matter and the reason for the disbursement on the memo line.

2. Canceled checks.  Canceled checks shall be obtained from the financial institution.  Imaged checks may be substituted for canceled checks.

3. Imaged checks.  Imaged checks shall be acceptable if they provide both the front and reverse of the check and comply with the requirements of this paragraph.  The information contained on the reverse side of the imaged checks shall include any endorsement signatures or stamps, account numbers, and transaction dates that appear on the original.  Imaged checks shall be of sufficient size to be readable without magnification and as close as possible to the size of the original check.

[13] SCR 20:1.15(e)(4)a. provides:  Operational requirements for trust accounts.

(4) Prohibited transactions.

10

20:3.4(c);[16] four violations of SCR 20:5.3(b);[17] five violations of SCR 20:8.4(c);[18] one violation of SCR 22.03(2),[19] enforced via

---

a. Cash.  No disbursement of cash shall be made from a trust account or from a deposit to a trust account, and no check shall be made payable to "Cash."

[14] SCR 20:1.15(e)(4)c. states:  Operational requirements for trust accounts.

(4) Prohibited transactions.  . . .

c. Internet transactions.  A lawyer shall not make deposits to or disbursements from a trust account by way of an Internet transaction.

[15] SCR 20:1.16(d) states:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred.  The lawyer may retain papers relating to the client to the extent permitted by other law.

[16] SCR 20:3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists; . . . ."

[17] SCR 20:5.3(b) states as follows:  "With respect to a nonlawyer employed or retained by or associated with a lawyer:  . . . (b) a lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; . . . ."

[18] SCR 20:8.4(c) provides it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

[19] SCR 22.03(2) states as follows:

11

SCR 20:8.4(h);[20] and five violations of SCR 22.03(6),[21] enforced via SCR 20:8.4(h).

¶16 In discussing the appropriate sanction, the referee noted that Attorney Biester engaged in multiple acts of misconduct that occurred over a period of years. She did not initially cooperate with the OLR during its investigations. The referee said the misuse of client funds became a pattern, and court orders were not followed. The referee also noted each of the six client matters detailed in the OLR's amended complaint

---

Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

[20] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

[21] SCR 22.03(6) provides:

In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

evidences harm to the client and injury to the integrity of the legal system in Wisconsin.

¶17 As mitigating factors, the referee said Attorney Biester appears to demonstrate genuine remorse. She has no prior misconduct adjudications over a practice career of almost 34 years. The referee said Attorney Biester is taking responsibility for her actions. The referee noted that during the period of her misconduct Attorney Biester suffered from serious physical and psychological issues, and suffered financial hardship and went through a personal bankruptcy proceeding. The referee said Attorney Biester has expressed concern for the victims of her misconduct, and he noted she has participated in outpatient treatment for her psychological issues.

¶18 The referee said suspension of an attorney's license to practice law for any period of time is a very serious consequence and also acts as a deterrent to others who practice law in this state. The referee concluded that an appropriate sanction for Attorney Biester's misconduct was a one-year suspension of her license to practice law in Wisconsin. The referee also concluded that restitution in the amount of $900 should be paid to J.F. The referee also recommended that Attorney Biester be required to successfully complete 20 hours of CLE ethics courses approved in advance by the OLR and minimally addressing issues related to office management, trust account maintenance, responsibility to clients, and compliance

13

with court orders. The referee also recommended that Attorney Biester be ordered to pay the full costs of the proceeding.

¶19 The referee added that, if in the future, the stay as to Count Two of the amended complaint is lifted and that matter is prosecuted, that matter would stand on its own and the OLR and Attorney Biester should not be prejudiced by the decision made in the instant case. The referee said if Attorney Biester is subsequently found to have committed the misconduct alleged in Count Two of the amended complaint and sanctions are imposed, those sanctions should run consecutive to the sanctions imposed in this case.

¶20 This court will affirm a referee's findings of fact unless they are clearly erroneous. Conclusions of law are reviewed de novo. In re Disciplinary Proceedings Against Tully, 2005 WI 100, ¶25, 283 Wis. 2d 124, 699 N.W.2d 882. This court is free to impose whatever discipline it deems appropriate, regardless of the referee's recommendation. In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶21 We adopt the referee's findings of fact because they have not been shown to be clearly erroneous, and we also agree with the referee's conclusions of law. As to the appropriate level of discipline, although at first blush a one-year suspension may seem to be on the light side for an attorney who has stipulated to 30 counts of professional misconduct, after careful consideration of all of the circumstances of this case,

14

we conclude that a one-year suspension of Attorney Biester's license to practice law is an appropriate sanction.

¶22  In In re Disciplinary Proceedings Against Raneda, 2012 WI 42, 340 Wis. 2d 273, 811 N.W.2d 412, an attorney who was found to have engaged in 14 counts of professional misconduct received a one-year suspension.  The misconduct included failing to hold disputed funds in trust, distributing trust funds to himself without promptly providing a full written accounting to the person who had ownership of the property, failing to keep his clients reasonably informed about the status of their matters, and failing to cooperate with the OLR.  The attorney had been practicing law for nine years and had no prior disciplinary history.

¶23  In In re Disciplinary Proceedings Against Mandelman, 2009 WI 40, 317 Wis. 2d 215, 765 N.W.2d 788, an attorney who stipulated to having engaged in six counts of professional misconduct also received a one-year suspension.  The misconduct included collecting a fee without performing any work, failing to promptly disburse client funds and provide a full accounting upon request, and failing to act with reasonable diligence and promptness in representing a client.  The attorney had been practicing law for 29 years and had been disciplined for professional misconduct on four prior occasions, including three prior suspensions.  The attorney's first contact with Wisconsin's lawyer disciplinary system, which occurred in 1990 when he had been practicing law for 10 years, resulted in his receiving a one-year suspension for 27 separate rule violations.

¶24 Since no two cases are precisely analogous, there is no "standard" sanction for particular misconduct. Nevertheless, the sanctions imposed in prior cases are instructive in fashioning an appropriate remedy for the case at hand. Attorney Biester has admitted to more counts of misconduct than were at issue in Raneda or the 2009 Mandelman matter. (Attorney Mandelman's 1990 case, which also resulted in a one-year suspension, involved roughly the same number of counts as does the instant case.) As the referee noted, Attorney Biester practiced law uneventfully for nearly 34 years. Her professional misconduct occurred during a period where she was experiencing serious personal hardships. She has accepted responsibility for her actions and has expressed concern for the victims of her misconduct. Upon consideration of all of the facts of this case, we agree with the referee that a one-year suspension of Attorney Biester's license to practice law in Wisconsin is an appropriate sanction.

¶25 Because the case presents no extraordinary circumstances, we further conclude that Attorney Biester should be required to pay the full costs of this matter. See SCR 22.24(1m) (supreme court's general policy upon a finding of misconduct is to impose all costs upon the respondent attorney). We also agree with the referee's recommendation that Attorney Biester should be required to complete CLE ethics courses preapproved by the OLR, and we concur with the referee's recommendation about future prosecution of Count Two of the amended complaint, should the existing stay be lifted.

16

¶26 Turning to the issue of restitution, the parties stated in their stipulation, and the referee agreed, that restitution in the amount of $900 should be ordered paid to J.F., unless Attorney Biester can demonstrate that that amount has already been paid.  The parties' stipulation points out that in the event the stay of all proceedings relating to Count Two is lifted, the OLR may continue the prosecution of Count Two and seek appropriate sanctions and restitution relating thereto.  The record indicates that the Wisconsin Lawyers' Fund for Client Protection (the Fund) has paid $78,000 to L.T.  In the event the stay of proceedings relating to Count Two of the amended complaint is lifted, the OLR will apparently be seeking an order requiring Attorney Biester to reimburse the Fund.  Since a stay of all proceedings relating to Count Two currently remains in effect, the issue of restitution to the Fund is not before us at this time.

¶27  IT IS ORDERED that the license of Mary K. Biester to practice law in Wisconsin is suspended for a period of one year, effective November 25, 2013.

¶28  IT IS FURTHER ORDERED that Mary K. Biester shall pay restitution in the amount of $900 to her former client, J.F., within 60 days of the date of this order, or provide documentation to the Office of Lawyer Regulation that restitution has already been made.

¶29  IT IS FURTHER ORDERED that, as a condition of her reinstatement, Mary K. Biester shall successfully complete 20 hours of continuing legal education ethics courses approved in

17

advance by the Office of Lawyer Regulation.  The courses should address issues related to office management, trust account maintenance, responsibility to clients, and compliance with court orders.

¶30  IT IS FURTHER ORDERED that within 60 days of the date of this order, Mary K. Biester shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $25,584.50 as of April 1, 2013.

¶31  IT IS FURTHER ORDERED that restitution is to be completed prior to paying costs to the Office of Lawyer Regulation

¶32  IT IS FURTHER ORDERED that Mary K. Biester shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶33  IT IS FURTHER ORDERED that, if in the future, the stay of all proceedings relating to Count Two of the amended complaint is lifted and there is an additional finding of misconduct as to Count Two, any sanction imposed as a result of that misconduct shall run consecutive to the one-year suspension imposed by the terms of this order.

¶34  IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement.  See SCR 22.29(4)(c).