# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP385-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Mary K. Biester, Attorney at Law: |
| | Office of Lawyer Regulation, |
| |    Complainant, |
| |   v. |
| | Mary K. Biester, |
| |    Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST BIESTER

| | |
|---|---|
| OPINION FILED: | July 22, 2016 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|  COURT: | |
|  COUNTY: | |
|  JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|  CONCURRED: | ABRAHAMSON, J. concurs (Opinion filed). |
|  DISSENTED: | |
|  NOT PARTICIPATING: | |

| | |
|---|---|
| ATTORNEYS: | |

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP385-D

STATE OF WISCONSIN        :       IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Mary K. Biester, Attorney at Law:**

**Office of Lawyer Regulation,**

        **Complainant,**

  **v.**

**Mary K. Biester,**

        **Respondent.**

**FILED**

**JUL 22, 2016**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review the report filed by Referee Dennis J. Flynn recommending the court suspend Attorney Mary K. Biester's license to practice law in Wisconsin for the maximum period allowed for multiple violations of supreme court rules, including converting client funds. Since no appeal has been filed, we review the referee's report and recommendation pursuant to Supreme Court Rule (SCR) 22.17(2). Upon careful review of the matter, we adopt the referee's findings of fact and conclusions of law. We conclude, however, that rather than

suspending Attorney Biester's license for the maximum period allowed, a three year and six month suspension of her license is an appropriate sanction. Because we noted in our previous order imposing a one year suspension that any sanction imposed as a result of an additional finding of misconduct shall run consecutive to the one year suspension, we deem it appropriate to make the three year and six month suspension retroactive to November 25, 2014, one year after the previous suspension was imposed. We also agree with the referee that Attorney Biester should be required to make restitution to the Wisconsin Lawyers' Fund for Client Protection and that she should pay the full costs of this proceeding, which were $8,712.86 as of December 18, 2015.

¶2 Attorney Biester was admitted to practice law in Wisconsin in 1979 and practiced in Beloit. As previously noted, on November 25, 2013, her license to practice law in Wisconsin was suspended for one year. The suspension arose out of 30 counts of misconduct involving six clients. The misconduct included failing to act with reasonable diligence and promptness in representing a client; failing to keep the client reasonably informed about the status of the matter; failing to explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation; engaging in conduct involving dishonesty, fraud, deceit or misrepresentation; multiple trust account violations; and failing to cooperate in the investigation of a grievance filed with the Office of Lawyer Regulation (OLR). In re Disciplinary

2

*Proceedings against Biester*, 2013 WI 85, 350 Wis. 2d 707, 838 N.W.2d 79. Her license remains suspended.

¶3 This disciplinary proceeding involves Count Two of the OLR's amended complaint, the only count that was not addressed in the 2013 decision. Count Two of the amended complaint involved Attorney Biester's representation of L.T. L.T. hired Attorney Biester to represent her in a divorce matter in 2008. Attorney Biester was experiencing financial problems at that time, and her home was the subject of a foreclosure action. L.T. had inherited a large sum of money, and Attorney Biester advised L.T. she should protect those funds from her husband. In February 2009, Attorney Biester's nonlawyer assistant, J.M., convinced L.T. to transfer $78,000 of her inherited funds into Attorney Biester's client trust account for safekeeping. Attorney Biester wire transferred $78,000 from her client trust account to the bank that held the first mortgage on Attorney Biester's home. Count Two of the OLR's amended complaint alleged the following violations of supreme court rules:

### COUNT TWO

**(Multiple Rule Violations)**

24(a). While representing L.T. at the time Biester deposited and then disbursed funds belonging to L.T. from her client trust account to pay off her personal mortgage with Associated Bank, Biester represented a client when the representation of that client was materially limited to Biester's responsibilities to a third person or by her own

personal interest, all in violation of SCR 20:1.7(a)(2).[1]

24(b). By failing until August 24, 2009, to inform L.T. that her funds had been deposited and disbursed from the client trust account and in failing to keep L.T. reasonably informed about the status of her legal matter, Biester violated SCR 20:1.4(a)(3).[2]

24(c). With knowledge of a court order limiting the transfer of property in the divorce action, and in failing to inform L.T. and the Court that L.T.'s funds had been deposited in Biester's client trust account and then transferred out of the client trust account to pay Biester's personal mortgage, Biester disobeyed an obligation under the rules of a tribunal, in violation of SCR 20:3.4(c).[3]

24(d). By depositing funds belonging to L.T. into her client trust account and converting those funds for the purpose of paying her mortgage obligation and in failing to inform her client and the Court of these events, Biester engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of SCR 20:8.4(c).[4]

---

[1] SCR 20:1.7(a)(2) provides: "Except as provided in par. (b), a lawyer shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client or a third person or by a personal interest of the lawyer."

[2] SCR 20:1.4(a)(3) provides: "A lawyer shall keep the client reasonably informed about the status of the matter."

[3] SCR 20:3.4(c) provides: "A lawyer shall not knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists."

[4] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

4

24(e). In failing to notify L.T. in writing of the receipt of funds in which L.T. had an interest, in failing to promptly deliver to L.T. any funds to which L.T. was entitled to receive, and in failing to provide a full accounting regarding the distribution of L.T.'s funds to L.T., Biester violated SCR 20:1.5(d)(1) and SCR 20:1.15(d)(2).[5]

¶4 Referee Flynn also presided over the earlier disciplinary proceeding. When the referee issued his first report in 2013, there was a possibility that criminal charges might be filed against Attorney Biester. In order to protect Attorney Biester's Fifth Amendment right against self-incrimination, the referee stayed proceedings as to Count Two. In March of 2015, the OLR notified this court that the Wisconsin Department of Justice had determined it will not criminally prosecute Attorney Biester for her conduct involving L.T.

---

[5] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016). Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

SCR 20:1.15(d)(1) and SCR 20:1.15(d)(2) provide: "(1) Upon receiving funds or other property in which a client has an interest, or in which the lawyer has received notice that a 3rd party has an interest identified by a lien, court order, judgment, or contract, the lawyer shall promptly notify the client or 3rd party in writing. Except as stated in this rule or otherwise permitted by law or by agreement with the client, the lawyer shall promptly deliver to the client or 3rd party any funds or other property that the client or 3rd party is entitled to receive.

(2) Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property."

5

Criminal charges are apparently pending against J.M. On May 12, 2015, this court granted the OLR's motion to lift the stay of proceedings with respect to Count Two and further ordered that the matter be referred to a referee for additional proceedings regarding Count Two of the amended complaint. Referee Flynn was again appointed to preside over the proceedings regarding Count Two of the amended complaint.

¶5 An evidentiary hearing in this matter was held on November 16, 2015. The only witnesses to testify at the hearing were Attorney Biester and Attorney Arthur K. Thexton, the character witness called by Attorney Biester. Attorney Thexton stated that Attorney Biester has a reputation for being truthful and honest. He also said he knows of J.M. from a time in the 1980s when he was a Wisconsin district attorney and he secured a conviction against J.M. for criminal fraud. The conviction resulted in a prison sentence for J.M.

¶6 The referee issued his report and recommendation on Count Two of the amended complaint on December 1, 2015. The referee noted that in its case in chief, OLR presented the videotaped deposition of L.T. L.T. testified that her interaction with Attorney Biester regarding her divorce was almost exclusively through J.M. L.T. said she was advised by Attorney Biester, acting through J.M., to transfer $78,000 into Attorney Biester's client trust account as a way of protecting those funds from her husband in the divorce proceeding. L.T. said she learned from J.M. about a month after transferring the $78,000 that the money had been used to purchase a home that

6

J.M. was going to remodel and then "flip" it and that J.M. was going to give L.T. $10,000 to boot within a month. L.T. said when she heard this she was furious and wanted her money back.

¶7 L.T. testified that in August 2009 Attorney Biester told L.T. that she had learned J.M. had taken the money from Attorney Biester's client trust account and had paid off Attorney Biester's mortgage on the home that was then in foreclosure. L.T. wrote a letter to the court in the divorce matter and explained what had happened. The court allowed L.T. to obtain new counsel. L.T.'s divorce was ultimately finalized but because of the way the $78,000 had been handled, that amount was determined to be comingled and viewed as marital property. L.T. subsequently made a claim to the Wisconsin Lawyers' Fund for Client Protection, which awarded her a full refund of the $78,000 due to her being the victim of fraud.

¶8 In his report, the referee noted that Attorney Biester claimed she did not know that J.M. had a criminal fraud record and did not know the $78,000 that was deposited into her client trust account came from L.T. She said J.M. alone made arrangements for L.T. to put the funds into the trust account and it was not until later that Attorney Biester learned from J.M. that the source of the $78,000 was L.T. and some associates of J.M.

¶9 The referee found L.T.'s testimony to be credible, and he found that Attorney Biester was not credible when she claimed she did not know that L.T. was the source of the $78,000. The referee noted that the $78,000 was the exact same amount of

7

money that Attorney Biester believed L.T. had received as an inheritance and was at issue in the division of the marital estate in the divorce action. The referee further noted that Attorney Biester was actually at her client trust account bank when the $78,000 was wired and received. The referee opined this suggests that Attorney Biester knew the funds were coming and she was immediately prepared to use those funds for her own benefit.

¶10 The referee said a reasonable inference from the evidence was that Attorney Biester and J.M. were acting together with full knowledge of what was occurring, and he said Attorney Biester had full knowledge that her client's funds were being wrongfully placed into her client trust account and were thereafter wrongfully converted to Attorney Biester's personal use. The referee said:

> She knew fully what was occurring on 10 February 2009 in terms of obtaining and converting her client's $78,000. She tried to cover up her wrongful conduct by placing the entire blame on her legal assistant, J.M. However, Respondent's failure to notify her client was intentional under the credible evidence and no reasonable excuse for Respondent not informing L.T. was provided.

¶11 For these reasons, the referee found that the OLR presented clear, satisfactory and convincing evidence of misconduct by Attorney Biester as alleged in each of the averments in Count Two of the amended complaint.

¶12 Turning to the appropriate sanction, the referee said the misconduct at issue here is quite serious. The referee said

the misconduct was aggravated because Attorney Biester continued to claim that she was innocent of wrongdoing and that she had been a victim of fraud by her employee. The referee said Attorney Biester took advantage of her relationship with L.T. and worked with her employee to have the $78,000 deposited into Attorney Biester's client trust account. The referee said, "The actions of this attorney have brought distain [sic] and dishonor to the entire legal profession in our State. A client was seriously harmed when she should have been protected."

¶13 The referee pointed to several mitigating factors. He noted that prior to her 2013 suspension, Attorney Biester had no discipline imposed during her 36-year legal career. The referee further noted that Attorney Biester has various health issues. He also pointed out that she has fully served the one year suspension that was previously ordered by this court. He also noted that Attorney Biester states she is now living on a very meager monthly Social Security award. The referee also noted Attorney Biester says she does not know where she would get the funds to meet her continuing legal education and ethics course requirements in the event she were to seek reinstatement of her law license in the future.

¶14 The referee concluded that Attorney Biester's license to practice law should be suspended for the maximum period

allowed.[6] The referee also recommends that Attorney Biester be ordered to pay the full costs of this proceeding and that she be ordered to reimburse the Wisconsin Lawyers Fund for Client Protection for the $78,000 that it paid to L.T.

¶15 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit, regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶16 There is no showing that any of the referee's findings of fact are clearly erroneous. According, we adopt them. We also agree with the referee's conclusions of law that Attorney Biester violated the supreme court rules set forth above.

¶17 With respect to the appropriate level of discipline, upon careful review of the matter, we conclude that rather than suspending Attorney Biester's license for the maximum period allowed, retroactive to November 25, 2013, Attorney Biester's license should be suspended for three years and six months retroactive to November 25, 2014.

---

[6] We are unsure what the referee meant by the term "the maximum period allowed." The most severe sanction this court can impose is the revocation of an attorney's license. An attorney whose license has been revoked may petition for reinstatement five years after the effective date of revocation. See SCR 22.29(2). A suspension for "the maximum period allowed" would presumably be approximately four years and eleven months.

¶18 As part of its order imposing the one year suspension of Attorney Biester's Wisconsin law license, this court specifically ordered that in the event the stay of proceedings relating to Count Two of the amended complaint was lifted and there was an additional finding of misconduct as to Count Two, "any sanction imposed as a result of that misconduct shall run consecutive to the one year suspension imposed by the terms of this order." Disciplinary Proceedings Against Biester, 350 Wis. 2d 707, ¶33. In order for the sanction imposed in the instant case to run consecutive to the prior one year suspension, the new sanction must be effective November 25, 2014.

¶19 We agree that the misconduct at issue here was very serious, but we are not convinced that it rises to the level of warranting a suspension of Attorney Biester's law license that approaches five years. Although no two disciplinary proceedings are identical, we find the decision in In re Disciplinary Proceedings Against Carter, 2014 WI 126, 359 Wis. 2d 70, 856 N.W.2d 595 to be somewhat similar. In Carter, an attorney who had been in practice for nearly 40 years pled no contest to 11 counts of misconduct, including converting over $72,000 of a client's funds. Carter's law license was suspended for three years. Mitigating factors in Carter were the attorney's lack of previous misconduct and his expression of remorse. Aggravating factors included the fact that the attorney's conduct was reckless and highly unprofessional and the attorney initially accused the client of trying to take advantage of him.

11

¶20 In this case, Attorney Biester practiced law for over 30 years before being disciplined. Attorney Biester converted a similar amount of money as Attorney Carter. However, unlike Attorney Carter, Attorney Biester has still not accepted full responsibility for her actions and instead continues to blame her former employee and portray herself as a victim. For all of these reasons, we conclude that a three year and six month suspension of Attorney Biester's license, retroactive to November 25, 2014, is an appropriate sanction.

¶21 We agree with the referee that Attorney Biester should be required to reimburse the Wisconsin Lawyers' Fund for Client Protection and that she should also be required to pay the full costs of this proceeding.

¶22 IT IS ORDERED that the license of Mary K. Biester to practice law in Wisconsin is suspended for a period of three years and six months, retroactive to November 25, 2014.

¶23 IT IS FURTHER ORDERED that within 60 days of the date of this order, Mary K. Biester shall make restitution in the amount of $78,000 to the Wisconsin Lawyers' Fund for Client Protection.

¶24 IT IS FURTHER ORDERED that within 60 days of the date of this order, Mary K. Biester shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $8,712.86 or enter into a payment agreement plan with the Office of Lawyer Regulation for the full payment of costs over a period of time.

12

¶25 IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶26 IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement. See SCR 22.29(4)(c).

¶27 SHIRLEY S. ABRAHAMSON, J. *(concurring).* I join the court's decision and order as to the discipline imposed in this matter. I write separately to address costs and restitution.

¶28 Attorney Biester has been ordered to pay the Office of Lawyer Regulation $8,712.86 in costs and to make restitution in the amount of $78,000 to the Wisconsin Lawyers' Fund for Client Protection. In the event Attorney Biester petitions for the reinstatement of her license to practice law in Wisconsin, she will be required to demonstrate that she has complied fully with the terms of the order of suspension, see SCR 22.29(4)(c), and that she has made restitution to or settled all claims of persons injured or harmed by her misconduct or explained the failure or inability to do so. See SCR 22.29(4m).

¶29 If an attorney has satisfied all of the requirements set forth in SCRs 22.31(1) and 22.29(4)(a)-(4m), his or her license to practice law may be reinstated notwithstanding the failure to pay costs or make restitution provided the attorney has been unable to do so due to a lack of financial resources. I write separately to clarify that Attorney Biester's inability to pay costs or make restitution, standing alone, would not automatically bar her from regaining her law license. See, e.g., In re Disciplinary Proceedings Against Widule, 2012 WI 63, 341 Wis. 2d 493, 817 N.W.2d 822; In re Disciplinary Proceedings Against Gilbert, 2002 WI 102, 255 Wis. 2d 311, 647 N.W.2d 845.