In the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
J. Manuel RANEDA, Attorney at Law:

OFFICE OF LAWYER REGULATION, Complainant,

v.

J. Manuel RANEDA, Respondent.

Supreme Court

*No. 2011AP817–D.—Decided May 1, 2012.*

2012 WI 42

(Also reported in 811 N.W.2d 412.)

¶ 1. PER CURIAM. On November 28, 2011, Referee Hannah C. Dugan issued a report recommending that Attorney J. Manuel Raneda be declared in default, concluding that Attorney Raneda engaged in numerous counts of professional misconduct, and recommending that his license to practice law in Wisconsin be suspended for one year and that he pay the full costs of this proceeding.

¶ 2. We conclude that the referee's findings of fact are supported by satisfactory and convincing evidence. Since Attorney Raneda failed to present a defense despite being given multiple opportunities to do so, we declare him to be in default. We further agree with the referee that Attorney Raneda's professional misconduct warrants a suspension of his license to practice law in Wisconsin for a period of one year. We also agree that

the full costs of the proceeding, which are $3,232.05 as of December 19, 2011, should be assessed against Attorney Raneda.

¶ 3. Attorney Raneda was admitted to practice law in Wisconsin in 2002. He practiced in Milwaukee. According to the record, he now lives in San Francisco, California. He has no previous disciplinary history.

¶ 4. On April 12, 2011, the Office of Lawyer Regulation (OLR) issued a complaint against Attorney Raneda alleging 14 counts of misconduct with respect to his handling of two client matters.

¶ 5. The first client matter detailed in the OLR's complaint involved Attorney Raneda's representation of T.W. T.W. fell behind on his mortgage payments, and in 2006 a judgment of foreclosure was entered against him. In March 2007 T.W.'s home was sold at a sheriff's sale. Prior to a hearing to confirm the sheriff's sale, a real estate investor contacted T.W. and offered to purchase the home pursuant to a sale-leaseback arrangement whereby T.W. would sell the house to the investor, enter into a residential lease agreement, and later purchase the house back once T.W.'s credit was restored.

¶ 6. T.W. sold the home to the investor's assignee and signed a residential month-to-month lease agreement whereby he agreed to pay rent in the amount of $1,500 per month. The agreement included an option for T.W. to repurchase the home once his credit history was repaired. The parties later agreed to raise the rental payments to $1,800 per month.

¶ 7. T.W. was unable to pay the monthly rent or repurchase the home. In December 2007 the owner of the home filed a small claims complaint seeking to evict T.W. from the home. T.W. hired Attorney Raneda to defend him in the eviction action. Attorney Raneda filed an answer, counterclaims, and a third-party summons

275

and complaint naming the real estate investor and other parties as third-party defendants. The pleadings filed by Attorney Raneda alleged that the sale-leaseback arrangement was a fraud and that the defendants had made multiple misrepresentations regarding the sale and lease of the property.

¶ 8. On January 4, 2008, the homeowner, through his attorney, Matthew O'Neill, filed a motion for judgment of eviction and a writ of restitution. The circuit court held a hearing on January 16, 2008. The court denied the motion for judgment of eviction, ordered T.W. to deposit into a trust account all past due rents by February 1, 2008, and ordered T.W. to continue paying all future rent into the trust account until further order of the court. The court also ordered Attorney Raneda to provide documentation showing the rent deposits.

¶ 9. Attorney Raneda agreed to keep the rent payments in his client trust account. On January 31, 2008, Attorney Raneda filed an affidavit with the court showing that T.W. had paid $5,100 into his client trust account, representing past due rent from October 2007 through January 2008. Attorney Raneda stated in the affidavit that the funds were deposited into his IOLTA trust account, and Attorney Raneda stated he would retain the funds until further court order.

¶ 10. Notwithstanding the express statements made in his affidavit, Attorney Raneda took $5,000 out of his client trust account on February 1, 2008, to pay himself attorney's fees. He did not notify the court or opposing counsel of the withdrawal.

¶ 11. A second hearing was held on February 19, 2008, to clarify the precise terms of the court's earlier order, including whether T.W. was to pay $1,500 or $1,800 monthly rent. By order of February 20, 2008, the circuit court required T.W. to make monthly deposits

into Attorney Raneda's trust account for past due rents at $1,800 per month until the matter was fully resolved. The court ordered that, upon request, T.W. was to provide the court and opposing counsel proof of each deposit. Attorney Raneda did not tell the court or opposing counsel that he had already taken $5,000 out of his client trust account to pay himself attorney's fees, and he did not provide a full written accounting of his distribution of the trust property.

¶ 12. Attorney O'Neill made multiple written requests for proof from Attorney Raneda that T.W. was continuing to make rent payments into Attorney Raneda's trust account. Attorney Raneda told Attorney O'Neill he had "received payments from [his] client" and that he would provide details about the payments.

¶ 13. On March 24, 2008, Attorney Raneda filed a motion for default judgment. On April 14, 2008, he filed a motion for declaratory judgment. On April 29, 2008, the homeowner filed a motion for sanctions against T.W. seeking dismissal of his counterclaims and other claims. On May 2, 2008, the circuit court denied Attorney Raneda's motions for default and declaratory judgment. The court ruled, however, that the buyback agreement entered into by T.W. failed to satisfy the statute of frauds.

¶ 14. On May 9, 2008, Attorney Raneda filed a response to the sanction motion in which he denied that he had disobeyed the terms of the court's February 20, 2008 order. Attorney Raneda's response to the motion for sanctions included an affidavit from T.W. showing that he had paid $8,728 into Attorney Raneda's trust account. Of that amount, Attorney Raneda had already withdrawn $5,000.

¶ 15. The circuit court held a hearing on the motion for sanctions on May 14, 2008. Despite having already paid himself $5,000, Attorney Raneda said T.W.

did not have the ability to pay him and that, "I haven't gotten paid." The circuit court denied the request for sanctions, but reaffirmed its February 20, 2008 order that required T.W. to pay rent owed into an escrow account. The court warned Attorney Raneda that in the event of T.W.'s failure to pay the rent, the court would strike T.W.'s pleadings as a sanction.

¶ 16. On May 14, 2008, Attorney Raneda wrote himself a check from his client trust account in the amount of $3,700 for attorney's fees. He did not notify the court or opposing counsel of this withdrawal.

¶ 17. On May 28, 2008, the circuit court entered a written order reiterating the requirement that T.W. pay into escrow all amounts due under the February 20, 2008 order. That same day Attorney Raneda wrote the court indicating that T.W. was unable to meet the financial obligations set by the court at the May 14, 2008 hearing. He noted that T.W. had decided to file an interlocutory appeal. Attorney Raneda did not inform the court that he had removed $8,700 from his trust account to pay himself attorney's fees.

¶ 18. Also on May 28, 2008, Attorney Raneda wrote Attorney O'Neill saying that T.W. had requested the withdrawal of the remaining funds left in his client trust account. Attorney Raneda also said he had a priority lien over the funds. On May 29, 2008, the homeowner filed an additional motion for sanctions for T.W.'s failure to comply with the circuit court orders. The circuit court granted the sanction motion on June 23, 2008, finding that T.W. had failed to comply with a valid court order and that his conduct was "egregious," "without justifiable excuse," and "repetitive." The court ordered T.W.'s counterclaims and third-party complaint dismissed and also ordered that the escrowed funds be

turned over to the homeowner. At no time did Attorney Raneda inform the court or opposing counsel that the escrowed funds had already been distributed to pay his attorney's fees.

¶ 19. On July 11, 2008, the circuit court issued a written order striking T.W.'s counterclaims and third-party claims due to his failure to obey the court's previous orders. The July 11 order also required that Attorney Raneda was to pay the homeowner's counsel all funds held in escrow within ten days.

¶ 20. On August 1, 2008, Attorney Raneda filed a notice of appeal of the sanction order. That same day the homeowner filed a renewed motion for summary judgment on the eviction action. On September 3, 2008, the circuit court held a hearing and granted summary judgment in favor of the homeowner. At the close of the hearing, the court admonished Attorney Raneda to "keep holding" the money in escrow so it could be collected by the homeowner in a garnishment action.

¶ 21. On September 15, 2008, the circuit court entered a written order granting the homeowner's motion for summary judgment and dismissing the action. The court ordered restitution to the homeowner in the amount of $20,700, representing the rent T.W. owed. T.W. had already paid $12,000 rent to the home-owner. The restitution order thus placed in dispute the $8,700 deposited by T.W. into Attorney Raneda's client trust account. Attorney Raneda filed a notice of appeal from that order on September 17, 2008, and the court of appeals consolidated T.W.'s two appeals.

¶ 22. On October 10, 2008, the homeowner filed a non-earnings garnishment action against Attorney Raneda to collect the monies held in escrow. Attorney Raneda filed an answer claiming he had no money of T.W.'s under his control. On February 4, 2009, during a

scheduling conference in the garnishment action, Attorney Raneda finally disclosed that money in his client trust account had been removed to pay his attorney's fees.

¶ 23.  On February 6, 2009, the homeowner filed a motion for remedial contempt in the garnishment proceeding and sought written discovery from T.W. regarding the escrowed funds. The circuit court ordered Attorney Raneda to respond to the discovery request. In a March 20, 2009 affidavit submitted as a part of his own motion for sanctions, Attorney Raneda stated the money had been withdrawn on or before May 14, 2008, and that no funds belonging to T.W. remained in the trust account.

¶ 24.  The homeowner filed a motion for contempt in the original proceeding. The circuit court found that Attorney Raneda engaged in misconduct by failing to disclose he had removed the $8,700 from his client trust account. The court determined the homeowner was entitled to recover attorney's fees for having to file the garnishment action. At a June 4, 2009 hearing, the circuit court ordered Attorney Raneda to pay $8,700 to the clerk of circuit court for disbursement to the homeowner. Attorney Raneda appealed that order. In a subsequent hearing held on September 28, 2009, the circuit court ordered Attorney Raneda to pay the homeowner's attorney fees and costs in the amount of $24,130.35. Attorney Raneda appealed that order as well.

¶ 25.  The court of appeals ultimately upheld the circuit court's decision to dismiss T.W.'s claims as sanctions for T.W.'s numerous failures to comply with court orders. The court of appeals affirmed the judgment of eviction and writ of restitution in favor of the homeowner. The court of appeals also held that Attorney

Raneda failed to appeal in his own name the sanction order requiring him to pay the $8,700 to the homeowner as well as the sanction order requiring him to pay attorney's fees. Thus, the court of appeals concluded it lacked jurisdiction to consider those appeals, and it dismissed them. The court of appeals deferred judgment on whether the homeowner was entitled to prevail on his cross-appeal for interest on the attorney fee award.

¶ 26. The OLR's complaint alleged the following counts of misconduct with respect to Attorney Raneda's representation of T.W.:

[COUNT ONE] By distributing to himself $5,000.00 in trust funds on February 1, 2008, as well as $3,700.00 in trust funds on May 14, 2008, without promptly providing a full written accounting regarding the property to [the homeowner], who had ownership in the property, [Attorney] Raneda violated SCR 20:1.15(d)(2).[1]

[COUNT TWO] By failing to hold disputed funds in trust, and, instead, unilaterally distributing the funds to pay for his attorney's fees and costs, [Attorney] Raneda violated SCR 20:1.15(d)(3).[2]

---

[1] SCR 20:1.15(d)(2) states: "Accounting. Upon final distribution of any trust property or upon request by the client or a 3rd party having an ownership interest in the property, the lawyer shall promptly render a full written accounting regarding the property."

[2] SCR 20:1.15(d)(3) provides: Disputes regarding trust property.

When the lawyer and another person or the client and another person claim ownership interest in trust property identified by a lien, court order, judgment, or contract, the lawyer shall hold that property in trust until there is an accounting and severance of the interests. If a dispute arises regarding the division of the property, the lawyer shall hold the disputed portion in trust

[COUNT THREE] By claiming in an affidavit dated January 31, 2008, filed with the Court, that he would retain the funds that he received from [T.W.] in his trust account until further order from the Court and then withdrawing those same funds on February 1, 2008, to pay himself attorney's fees, without notifying the Court; by claiming during argument before [the Court] on May 14, 2008, that his client had not paid him, because he did not have the ability to pay, when [Attorney] Raneda had already paid himself $5,000.00 out of the client trust account as attorney's fees; by failing to inform [the Court] during the May 14, 2008, sanction hearing that he had removed $5,000.00 in funds from trust to pay attorney's fees; by failing to inform [the Court] in a letter to the Court dated May 28, 2008, that [Attorney] Raneda had removed $8,700.00 in funds from the trust account to pay attorney's fees after previously stating to the tribunal both in an affidavit filed with the Court and in pleadings that the funds had been "set aside;" by failing to inform [the Court] during the June 23, 2008, sanctions hearing that [Attorney] Raneda had previously removed $8,700.00 from the trust account to pay attorney's fees, causing [the Court] to order that the escrowed funds be turned over based upon a belief that the escrowed funds existed; and by failing to inform [the Court] during the September 3, 2008, motion for judgment and eviction that [Attorney] Raneda had previously removed $8,700.00 from the trust account to pay attorney's fees, causing [the Court] to order [Attorney] Raneda to continue to hold such funds, [Attorney] Raneda violated SCR 20:3.3(a)(1).[3]

until the dispute is resolved. Disputes between the lawyer and a client are subject to the provisions of sub. (g)(2).

[3] SCR 20:3.3(a)(1) states a lawyer shall not knowingly "make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer; . . . ."

[COUNT FOUR] By submitting an affidavit to the Court from his client on May 9, 2008, stating that his client had set aside approximately $8,700.00 into his client trust account when [Attorney] Raneda had already withdrawn $5,000.00 to pay himself attorney's fees, [Attorney] Raneda violated SCR 20:3.3(a)(3).[4]

[COUNT FIVE] By paying himself $5,000.00 of attorney's fees on February 1, 2008, from his client trust account, after the Court ordered him to keep the funds paid by his client in a trust account until further order and by paying himself $3,700.00 in attorney's fees on May 14, 2008, from his client trust account, after the Court ordered him to keep the funds in his client trust account until further order, [Attorney] Raneda violated SCR 20:3.4(c).[5]

[COUNT SIX] By failing to disclose in response to the April 1, 2009, interrogatories and requests for admissions that he had paid himself attorney's fees out of the trust account designed to hold his client's rent payments, [Attorney] Raneda violated SCR 20:3.4(d).[6]

---

[4] SCR 20:3.3(a)(3) states that a lawyer shall not knowingly:

offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter that the lawyer reasonably believes is false.

[5] SCR 20:3.4(c) provides that a lawyer shall not "knowingly disobey an obligation under the rules of a tribunal, except for an open refusal based on an assertion that no valid obligation exists; . . . ."

[6] SCR 20:3.4(d) states that a lawyer shall not "in pretrial procedure, make a frivolous discovery request or fail to make reasonably diligent effort to comply with a legally proper discovery request by an opposing party; . . . ."

[COUNT SEVEN] By failing to advise the Court or opposing counsel on multiple occasions that he had withdrawn funds from his client trust account knowing those funds were to be set aside; by stating in his May 9, 2008, response to [the homeowner's] motion for sanctions that since March of 2007 [T.W.] has paid to [the homeowner] or put aside an amount of not less than $21,528.00 when [Attorney] Raneda had already removed $5,000.00 from a client trust account; by filing an affidavit with the Court on May 9, 2008, stating that $8,700.00 had been paid into [Attorney] Raneda's client trust account, when [Attorney] Raneda had previously removed $5,000.00 in funds for attorney's fees; by filing an affidavit with the Court on March 20, 2009, in support of his motion for sanctions stating that [T.W.] had made $8,700.00 in payments to [Attorney] Raneda's client trust account without disclosing that [Attorney] Raneda had removed a total of $8,700.00 from such account; and by submitting discovery responses on April 1, 2009, that contained false, incomplete, or misleading information, [Attorney] Raneda violated SCR 20:8.4(c).[7]

¶ 27. The second client matter detailed in the OLR's complaint involved Attorney Raneda's representation of G.O., who purchased a home on North Lake Drive in Milwaukee. The sellers of the home prepared a real estate condition report representing they were not aware of any defects in the electrical system. An inspection of the home noted a number of potential safety hazards, including defects in the electrical system. After G.O. submitted an offer to purchase, the sellers submitted an amended real estate condition report saying that the attic wiring was removed and that all

[7] SCR 20:8.4(c) says it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation; . . . ."

outlets were brought up to code. G.O. did not sign the report and denied ever seeing it. After the sellers accepted G.O.'s offer to purchase, G.O. hired a home inspector who recommended the sellers fix the electrical defects identified in the previous inspection report prior to closing. G.O. submitted an amendment to his offer to purchase requesting the sellers to make additional repairs to the home. The sellers agreed to the amendment. The sellers subsequently forwarded G.O. a letter from Electrical Concepts saying that while the knob and tube behind the plaster wall in the attic had not been removed, the wiring was dead.

¶ 28. G.O. closed on the house on December 18, 2007. Soon thereafter, he discovered problems with the electrical system. He received estimates to repair the electrical system and was advised that, contrary to the report prepared by Electrical Concepts, the knob and tube wiring in the attic had not been disconnected but was live and was being used throughout the house.

¶ 29. In May 2008 G.O. hired Attorney Raneda to seek recovery from the sellers for purportedly making untrue, deceptive, or misleading statements in connection with the real estate sale. G.O. signed a fee agreement and paid Attorney Raneda $5,000, which Attorney Raneda deposited into his business account.

¶ 30. On July 1, 2008, Attorney Raneda sent a demand letter to the sellers seeking recovery for the cost of repairing the electrical defect. The sellers responded through their attorneys, Godfrey & Kahn, saying the sellers had disclosed the existence of the knob and tube wiring in their amended real estate condition report. Attorney Raneda wrote back on August 4, 2008, saying the sellers knew the home had serious and dangerous electrical defects and demanding compensation. After mid-August 2008 G.O. called At-

285

torney Raneda about once a month but his calls were rarely returned. In February 2009 Attorney Raneda e-mailed G.O. saying he had not forgotten about the case and that he would soon be able to work exclusively on the matter. G.O. subsequently hired another attorney who demanded that Attorney Raneda return all unearned fees and costs as well as documents from G.O.'s file.

¶ 31. On November 3, 2009, G.O. filed a grievance against Attorney Raneda with the OLR. In December 2009 Attorney Raneda wrote OLR intake staff claiming he had previously informed G.O. that the amended real estate condition report was fatal to his claim and that he could not represent G.O. further. Attorney Raneda failed to respond to the OLR's notice of investigation. After this court issued an order to show cause, Attorney Raneda finally responded to the OLR.

¶ 32. The OLR's complaint alleged the following counts of misconduct with respect to Attorney Raneda's representation of G.O.:

[COUNT EIGHT] By failing to hold the portion of the $5,000.00 collected from [G.O.] designated as an advanced payment for "costs and expenses" in trust, [Attorney] Raneda violated SCR 20:1.15(b)(1).[8]

[COUNT NINE] By accepting a $5,000.00 advance fee payment from [G.O.] and failing to hold the advance fee in trust (with no evidence that he intended to utilize the alternative fee placement permitted by SCR

---

[8] SCR 20:1.15(b)(1) provides:   Separate account.

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

20:1.15(b)(4m)), [Attorney] Raneda violated SCR 20:1.15(b)(4).[9]

[COUNT TEN] By failing to advance [G.O.'s] interest subsequent to the demand letters he sent on behalf of [G.O.] in July and August 2008, [Attorney] Raneda violated SCR 20:1.3.[10]

[COUNT ELEVEN] By failing to keep [G.O.] reasonably informed about the status of the matter and by failing to promptly comply with [G.O.'s] repeated requests for information, [Attorney] Raneda violated SCR 20:1.4(a)(3) and SCR 20:1.4(a)(4).[11]

[COUNT TWELVE] By failing to respond to Attorney Zimmerman's letter on behalf of [G.O.] dated September 23, 2009, seeking an accounting of fees and expenses, [Attorney] Raneda violated SCR 20:1.5(b)(3).[12]

[COUNT THIRTEEN] By failing to surrender his file after a specific request by Attorney Zimmerman on behalf of [G.O.] to do so, and, in addition, in failing to refund a portion of the funds advanced by [G.O.], a

---

[9] SCR 20:1.15(b)(4) states: Unearned fees and cost advances.

Except as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

[10] SCR 20:1.3 states, "A lawyer shall act with reasonable diligence and promptness in representing a client."

[11] SCRs 20:1.4(a)(3) and (4) provide that a lawyer shall: "(3) keep the client reasonably informed about the status of the matter;" and "(4) promptly comply with reasonable requests by the client for information; . . . ."

[12] SCR 20:1.5(b)(3) states "[a] lawyer shall promptly respond to a client's request for information concerning fees and expenses."

287

portion of which were designated as being for costs and expenses, [Attorney] Raneda violated SCR 20:1.16(d).[13]

[COUNT FOURTEEN] By failing to timely cooperate with OLR's investigation in the [G.O.] matter and not responding until after his law license was under threat of suspension for his willful non—cooperation, [Attorney] Raneda violated SCR 22.03(2) and SCR 22.03(6)[14] which are enforceable under the Rules of Professional Conduct through SCR 20:8.4(h).[15]

---

[13] SCR 20:1.16(d) provides as follows:

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as giving reasonable notice to the client, allowing time for employment of other counsel, surrendering papers and property to which the client is entitled and refunding any advance payment of fee or expense that has not been earned or incurred. The lawyer may retain papers relating to the client to the extent permitted by other law.

[14] SCRs 22.03(2) and (6) state:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[15] SCR 20:8.4(h) states it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance

288

¶ 33. Although he was served with the OLR's complaint, Attorney Raneda did not file an answer nor did he participate in a telephonic scheduling/status conference held in July 2011. On August 15, 2011, the OLR filed a notice of motion and motion for default judgment. A hearing on the motion was scheduled for September 27, 2011. Attorney Raneda was notified of the hearing via certified mail. Attorney Raneda failed to appear at the hearing. The referee stated on the record that she received the return receipt of the hearing notice that had been sent via certified mail, and the receipt indicated that Attorney Raneda had changed his address to San Francisco, California.

¶ 34. The referee's report notes that although Attorney Raneda initially cooperated with the OLR's investigation, he chose not to respond or otherwise engage in a defense to the 14 counts of alleged misconduct. The referee accepted the allegations of misconduct set forth in the OLR's complaint as true and recommends that Attorney Raneda be declared in default.

¶ 35. The referee concluded that a one-year suspension of Attorney Raneda's license to practice law in Wisconsin was warranted. The referee noted that Attorney Raneda's misconduct was intentional and repeated and caused needless delay, harm to the parties' interests, and constituted an abuse and misuse of the limited resources of the justice system. As mitigating factors, the referee noted that Attorney Raneda had no prior disciplinary record, he ultimately returned the $8,700 in diverted funds, he initially cooperated with the OLR's investigation, and he incurred a personal

---

filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1); . . . ."

obligation of nearly $25,000 in sanctions for his conduct. The referee noted the OLR was not seeking restitution since the funds in dispute in the T.W. case had been repaid. The referee recommended that Attorney Raneda pay the full costs of the proceeding.

¶ 36.  Attorney Raneda has not filed an appeal from the referee's report and recommendation.

■

¶ 37.  As an initial matter, we agree with the referee that Attorney Raneda should be declared in default. Although Attorney Raneda was served with the OLR's complaint and was given notice of the hearing on the motion for default judgment, he failed to appear or present a defense. Accordingly, we deem it appropriate to declare him in default.

■■

¶ 38.  A referee's findings of fact are affirmed unless they are clearly erroneous. Conclusions of law are reviewed de novo. *See In re Disciplinary Proceedings Against Eisenberg,* 2004 WI 14, ¶ 5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation *See In re Disciplinary Proceedings Against Widule,* 2003 WI 34, ¶ 44, 261 Wis. 2d 45, 660 N.W.2d 686.

■

¶ 39.  There is no showing that any of the referee's findings of fact are clearly erroneous. Therefore, we adopt them. We also agree with the referee's conclusions of law that Attorney Raneda engaged in multiple counts of misconduct. We further agree that a one-year suspension of Attorney Raneda's license to practice law is an appropriate sanction for his misconduct, and we agree that he should pay the full costs of the proceeding.

290

¶ 40. Although the OLR indicated it was not seeking restitution in the T.W. case because the funds had been repaid, the record was silent as to whether restitution should be ordered in the G.O. case. Accordingly, on February 23, 2012, the parties were ordered to inform this court why Attorney Raneda should not be required to make restitution to G.O. The OLR filed a response on March 7, 2012. Attorney Raneda did not respond.

¶ 41. The OLR states that it considered whether to seek restitution but ultimately concluded not to do so since the amount of restitution was not readily ascertainable because Attorney Raneda did perform some work on behalf of G.O., including writing demand letters, communicating with opposing counsel, and researching case law. Upon consideration of the OLR's response, we agree that an award of restitution is not appropriate.

¶ 42. IT IS ORDERED that the license of J. Manuel Raneda to practice law in Wisconsin is suspended for one year, effective June 4, 2012.

¶ 43. IT IS FURTHER ORDERED that within 60 days of the date of this order, J. Manuel Raneda shall pay to the Office of Lawyer Regulation the costs of this proceeding. If the costs are not paid within the time specified and J. Manuel Raneda has not entered into a payment plan approved by the Office of Lawyer Regulation, then the Office of Lawyer Regulation is authorized to move this court for a further suspension of the license of J. Manuel Raneda to practice law in Wisconsin.

¶ 44. IT IS FURTHER ORDERED that J. Manuel Raneda shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.