# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2012AP931-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Richard W. Voss, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>       Complainant-Appellant,<br>    v.<br>Richard W. Voss,<br>       Respondent-Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST VOSS

| | |
|---|---|
| OPINION FILED: | July 18, 2014 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | |
| COUNTY: | |
| JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | |
| DISSENTED: | |
| NOT PARTICIPATING: | |

ATTORNEYS:

For the complainant-appellant, there were briefs by *Julie M. Spoke* and the *Office of Lawyer Regulation*.

For the respondent-respondent, there was a brief by *Richard W. Voss* and *Voss Law Office*, Rhinelander.

**2014 WI 75**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2012AP931-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Richard W. Voss, Attorney at Law:**

**Office of Lawyer Regulation,**

**Complainant-Appellant,**

**v.**

**Richard W. Voss,**

**Respondent-Respondent.**

**FILED**

**JUL 18, 2014**

Diane M. Fremgen
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. The Office of Lawyer Regulation (OLR) appeals from that portion of a referee's report recommending that the license of Attorney Richard W. Voss to practice law in Wisconsin be suspended for one year as a sanction for professional misconduct. The OLR argues that Attorney Voss's license to practice law should be revoked.

¶2 Upon careful review of this matter, we conclude that an eighteen-month suspension of Attorney Voss's license to

practice law is an appropriate sanction for his misconduct.  We agree with the referee that Attorney Voss should be ordered to make restitution to his former client's estate in the amount of $2,077.18 and that he be ordered to pay the full costs of this proceeding, which are $4,625.48 as of April 2, 2014.  We further concur with the referee's recommendation that, as a condition of the reinstatement of his license to practice law in Wisconsin, Attorney Voss be required to demonstrate that he has in place a proper trust account consistent with supreme court rules.

¶3  Attorney Voss was admitted to practice law in Wisconsin in 1976, and practices in Rhinelander.  In 2004 Attorney Voss was privately reprimanded for violating Supreme Court Rules (SCRs) 20:1.1 and 20:1.4(a).  Private Reprimand, No. 2004-24.[1]  In 2006 Attorney Voss received a public reprimand for various trust account violations.  Public Reprimand of Richard W. Voss, No. 2006-7.

¶4  On May 2, 2012, the OLR filed a complaint alleging 11 counts of misconduct arising out of Attorney Voss's work as the court-appointed guardian of J.K., who is now deceased.  In September of 1987, Attorney Voss was appointed by the Oneida County circuit court as the guardian of the person and estate of J.K.  J.K. suffered from mental illness, complicated by alcohol abuse and diabetes, requiring a long period of protective

---

[1] The OLR's complaint cited Private Reprimand No. 2004-25, but that matter involved criminal conduct by a lawyer, which clearly does not fit the description of Attorney Voss's misconduct.  Private Reprimand No. 2004-24 involved violations of SCRs 20:1.1 and 20:1.4(a).

2

placement.  The circuit court never approved or authorized any guardianship fees to be paid to Attorney Voss from J.K.'s funds.

¶5  Attorney Voss did not set up a separate guardianship account to handle J.K.'s income and expenses.  Instead, Attorney Voss deposited J.K.'s monthly social security benefits in an account at M&I Bank designated as his client trust account.  The account at M&I Bank is not an Interest on Lawyer Trust Accounts (IOLTA) account but rather a personal checking account that does not accrue interest.  Attorney Voss also maintained a separate business account at M&I Bank designated as a non-personal account.  Attorney Voss is responsible for recordkeeping for his client trust account and is the sole person authorized to sign checks.

¶6  From 1987 through 1990, J.K. resided in a private facility and substantially all of his income was used to pay for the costs of his care.  In 1990 J.K. was moved to a facility run by the Veterans Administration (VA).  The VA did not require a payment for J.K.'s room, board, and care.  Attorney Voss made regular disbursements to the VA for J.K.'s personal needs and incidentals.

¶7  Between 1990 and 2008, Attorney Voss received social security benefits on J.K.'s behalf totaling between $5,250 and $7,848 annually.  Between 1990 and 2008, Attorney Voss disbursed no more than $4,320 per year to the VA on behalf of J.K.  From 1991 until September of 2002, Attorney Voss made disbursements to the VA for J.K.'s personal needs and incidentals in the amount of $70 per week.  In September of 2002, Attorney Voss

increased the disbursement to $80 per week. In October of 2007, Attorney Voss ceased to make any payments to the VA for J.K.'s personal needs and incidentals.

¶8 Attorney Voss should have accumulated at least $1,767.60 per year attributable to J.K. in his trust account over and above the amounts disbursed for J.K. In some years the trust account should have accumulated over $3,000 more than was disbursed on J.K.'s behalf.

¶9 In October of 2007, J.K.'s social worker suggested that Attorney Voss establish a burial fund for J.K. Attorney Voss opened a separate account at People's State Bank in December of 2007. The account was titled "[J.J.K.] Richard [W.] Voss, Guardian" to be held as a burial account. Attorney Voss transferred $5,690 from his trust account into J.K.'s burial account.

¶10 Between 1987 and 1996, Attorney Voss filed annual accountings with the Oneida County circuit court regarding his guardianship for J.K. In January of 1998, the circuit court entered an order waiving any further annual accountings for J.K., finding, based on Attorney Voss's representations, that it was unlikely J.K. would have an estate worth more than $1,000 in the foreseeable future. After 1998, Attorney Voss periodically filed affidavits with the circuit court advising the court that J.K.'s assets remained under $1,000 in the preceding calendar year. Attorney Voss filed no further accounting until 2008.

¶11 On April 16, 2008, Attorney Voss filed an annual accounting with the Oneida County circuit court showing that

4

J.K. had assets of $10,102.06 as of December 31, 2007. Following J.K.'s death, on December 8, 2008, Attorney Voss filed a summary assignment petition showing J.K.'s assets totaling $14,145.93.

¶12 Since the circuit court had believed that J.K.'s assets had not exceeded $1,000 in any calendar year, the court requested an explanation from Attorney Voss regarding J.K.'s assets. At the direction of the circuit court, Oneida County Register in Probate Susan Ohman also began communicating with Attorney Voss asking for information about J.K.'s assets.

¶13 The circuit court subsequently obtained records from the VA for all amounts paid to it on J.K.'s behalf and obtained records from the Social Security Administration to confirm J.K.'s income from 1990 until the date of his death. Ms. Ohman performed a "rough fraud audit" and determined there was more than $40,000 in income attributable to J.K. that Attorney Voss had not accounted for that should have been in Attorney Voss's client trust account. Ultimately, the circuit court concluded that Attorney Voss had not accounted for $46,103.88 of J.K.'s funds.

¶14 The circuit court removed Attorney Voss as a special administrator of J.K.'s estate and appointed former Register in Probate Maxine Meyer as special administrator of the estate. After demand was made by Meyer pursuant to Wis. Stat. § 943.20(1)(b) in October of 2009, Attorney Voss sent two checks to Meyer to reimburse J.K.'s estate. The first check was in the

5

amount of $44,501.88, and the second check was in the amount of $1,602.

¶15 In correspondence dated August 14, 2009, Attorney Voss told Ohman that he did not keep good track of what money was going in and out of his trust account, that he did not maintain separate trust account ledgers for each client, and that his recordkeeping problems were compounded by the fact that client monies of his brother, Attorney Frederick Voss, were also in his trust account.

¶16 On September 11, 2009, during a meeting with Ohman and a detective from the Oneida County sheriff's department, Attorney Voss said that when he received a bankruptcy retainer fee, he would deposit the client's retainer check into his business account and then, when he paid the bankruptcy filing fee, he would pay it out of his trust account using J.K.'s money.

¶17 In December of 2009, Oneida County Circuit Court Judges Mark A. Mangerson and Patrick F. O'Melia filed a grievance with the OLR, asking for an investigation into Attorney Voss's conduct while he was serving as the guardian of the person and estate of J.K. On January 28, 2010, the OLR sent Attorney Voss a letter providing notice of the investigation into the J.K. matter. The OLR requested certain information and records, including copies of Attorney Voss's banking and trust account records for the time period he served as J.K.'s guardian. Attorney Voss was unable to provide the OLR with copies of all bank statements, cancelled checks or imaged

6

checks, and deposit slips and items he was required to maintain pursuant to SCR 20:1.15.

¶18 Although Attorney Voss provided the OLR with a transaction register for the requested time period, the register failed to maintain a running balance, failed to document all deposits and disbursements, failed to identify the client matter regarding all deposits and disbursements, and included inaccurate entries.

¶19 In a March 9, 2010 letter sent in response to the OLR's investigative request that he describe in detail his procedures for managing J.K.'s funds, Attorney Voss described a process that looked at the overall balance in his trust account compared to the overall disbursements, but that did not include recording specific deposits and disbursements for J.K.

¶20 In a letter to the OLR dated August 22, 2011, Attorney Voss explained his firm's procedures for handling client money between January 1, 2004, and October 31, 2008. He said:

> [M]ost of the money which was deposited into the client trust account was for work done on bankruptcy cases and a flat fee was agreed upon between myself and the client. That fee included an amount to be paid for filing fees and an amount for the work to be done and was payable in full before the work would be done due to the fact that most bankruptcy clients are not good risks to pay attorney fees after their case is filed. The funds would be deposited in the amount necessary to pay the filing fees which was done in every bankruptcy case and then the remainder would be transferred at the time of deposit and denominated as cash in many instances and deposited into my personal account. I was aware of what cases were being filed and made sure the amount necessary to pay the fees was in the account. At no time was there an insufficient

7

amount to pay any filing fees received from any clients.

¶21 Attorney Voss also stated that he used two credit cards to pay his clients' bankruptcy filing fees and that he would look at the amounts forwarded to the U.S. Bankruptcy Court during a billing period and would then issue a check to the credit card company for payment of those amounts.

¶22 Attorney Voss told the OLR that Frederick J. Voss was his brother and rented space from him but Frederick was not a partner, employee, or member of the firm and received no money from Attorney Voss. However, Frederick Voss paid some of the office expenses. Attorney Voss and his brother practiced from the same location, used the same letterhead, which stated "Voss Law Office," and used both names on the letterhead without indicating that Frederick Voss was not an employee, associate, partner, or member of the law firm. Funds received by Frederick J. Voss relating to his representation of clients were deposited and disbursed from the Voss Law Office trust account.

¶23 The OLR created a transaction register and client ledger reconstructing activity in Attorney Voss's client trust account between January 1, 2004, and October 31, 2008. The OLR's reconstructed trust account ledger showed that Attorney Voss's trust account was repeatedly and chronically out of trust and but for J.K.'s funds in the account, the account would have been overdrawn on numerous occasions. The OLR's audit of Attorney Voss's trust account also revealed numerous instances where Attorney Voss disbursed funds from the trust account,

8

including bankruptcy filing fees, before he deposited the source of those funds for disbursement, thereby at least temporarily using one client's funds for the benefit of another client.

¶24 The recreation of Attorney Voss's trust account showed that, during the period of time he served as J.K.'s guardian, Attorney Voss converted at least $48,791.73 of J.K.'s funds either for his own use or to cover expenditures for other client matters. Since Attorney Voss repaid $46,103.88 to J.K.'s estate, the OLR's audit revealed that Attorney Voss still owes $2,077.18 in restitution to J.K.'s estate.

¶25 The OLR's complaint alleged the following counts of misconduct:

> [COUNT ONE] By failing to safeguard and hold in trust client and third party funds and by converting client funds to his own use or for the use of other clients and third parties, Voss violated former SCR 20:1.15(a),[2] in effect prior to July 1, 2004,

---

[2] SCR 20:1.15(a) (effective prior to July 1, 2004) provided:

> A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and third persons that is in the lawyer's possession in connection with a representation or when acting in a fiduciary capacity. Funds held in connection with a representation or in a fiduciary capacity include funds held as trustee, agent, guardian, personal representative of an estate, or otherwise. All funds of clients and third persons paid to a lawyer or law firm shall be deposited in one or more identifiable trust accounts as provided in paragraph (c). The trust account shall be maintained in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The trust account shall be clearly designated as "Client's Account" or "Trust Account" or words of similar

current SCR 20:1.15(b)(1),[3] in effect as of July 1, 2004, and SCR 20:8.4(c).[4]

[COUNT TWO] By, at such time as [J.K.'s] expenses ceased to equal his income, failing to hold [J.K.'s] assets in a separate fiduciary account or to seek the court's guidance as to whether he should hold [J.K.'s] assets in a separate fiduciary account, Voss violated

---

import. No funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay or avoid imposition of account service charges, may be deposited in such an account. Unless the client otherwise directs in writing, securities in bearer form shall be kept by the attorney in a safe deposit box in a bank, savings bank, trust company, credit union, savings and loan association or other investment institution authorized to do business and located in Wisconsin. The safe deposit box shall be clearly designated as "Client's Account" or "Trust Account" or words of similar import. Other property of a client or third person shall be identified as such and appropriately safeguarded. If a lawyer also licensed in another state is entrusted with funds or property in connection with an out-of-state representation, this provision shall not supersede the trust account rules of the other state.

[3] SCR 20:1.15(b)(1) (effective July 1, 2004) provides:

A lawyer shall hold in trust, separate from the lawyer's own property, that property of clients and 3rd parties that is in the lawyer's possession in connection with a representation. All funds of clients and 3rd parties paid to a lawyer or law firm in connection with a representation shall be deposited in one or more identifiable trust accounts.

[4] SCR 20:8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

former SCR 20:1.15(c)(2),[5] in effect prior to July 1, 2004, and former SCR 20:1.15(c)(2),[6] in effect between July 1, 2004 and December 31, 2009.

---

[5] SCR 20:1.15(c)(2) (effective prior to July 1, 2004) provided:

A lawyer shall deposit all client funds in the account specified in paragraph (1) unless they are deposited in any of the following:

a. A separate interest-bearing trust account for the particular client or client's matter, the interest on which shall be paid to the client, net of any transaction costs.

b. A pooled interest-bearing trust account with sub-accounting by the financial institution, the lawyer or the law firm that will provide for computation of interest earned by each client's funds and the payment thereof to the client, net of any transaction costs.

c. An interest-generating investment vehicle selected by the client and designated in specific written instructions from the client or authorized by the court or other tribunal, on which income shall be paid to the client or as directed by the court or other tribunal, net of any transaction costs.

cg. An income-generating investment vehicle selected by the lawyer and approved by a court where the lawyer serves as guardian for a ward, under chs. 880 and 881, stats.

cm. An income-generating investment vehicle selected by the lawyer to protect and maximize the return on funds in a bankruptcy estate, which investment vehicle is approved by the trustee in bankruptcy and by a bankruptcy court order, consistent with 11 USC 345.

d. A demand deposit or other non-interest-bearing account for funds that are neither nominal in amount nor expected to be held for a short term, provided the client specifically so directs.

[COUNT THREE] By knowingly making misrepresentations to the Oneida County Circuit Court regarding: (i) [J.K.'s] assets; (ii) Voss' handling of [J.K.'s] assets; and (iii) that he represented

---

[6] SCR 20:1.15(c)(2) (effective from July 1, 2004 to December 31, 2009) provided:

A lawyer shall deposit all client funds in the account specified in par. (1) unless the funds are deposited in any of the following:

a. a separate interest-bearing trust account for the particular client or client's matter, the interest on which shall be paid to the client, less any transaction costs;

b. a pooled interest-bearing trust account with sub-accounting by the financial institution, the lawyer, or the law firm that will provide for computation of interest earned by each client's funds and the payment of the interest to the client, less any transaction costs;

c. an income-generating investment vehicle selected by the client and designated in specific written instructions from the client or authorized by the court or other tribunal, on which income shall be paid to the client or as directed by the court or other tribunal, less any transaction costs;

d. an income-generating investment vehicle selected by the lawyer and approved by a court for guardianship funds if the lawyer serves as guardian for a ward under chs. 880 and 881, stats.;

e. an income-generating investment vehicle selected by the lawyer to protect and maximize the return on funds in a bankruptcy estate, which investment vehicle is approved by the trustee in bankruptcy and by a bankruptcy court order, consistent with 11 USC 345; or

f. a demand deposit or other non-interest-bearing account for funds that are neither nominal in amount nor expected to be held for a short term, if the client specifically so approves.

[J.K.] in the capacity as [J.K.'s] attorney with regard to a 2005 Watts hearing, when Voss knew or should have known that he was providing the court with an inaccurate information or impression regarding the same, and by failing to take reasonable steps to correct misrepresentations previously made to the court once Voss knew that he had made misrepresentations, Voss violated former SCR 20:3.3(a)(1) and (4),[7] in effect prior to July 1, 2007, current SCR 20:3.3(a)(1) and (3),[8] in effect as of July 1, 2007, and SCR 20:8.4(c).

[COUNT FOUR] By depositing or authorizing others to deposit advanced costs paid by clients in his

---

[7] SCR 20:3.3(a)(1) and (4) (effective prior to July 1, 2007) provided that a lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal;

. . . .

(4) offer evidence that the lawyer knows to be false. If a lawyer has offered material evidence and comes to know of its falsity, the lawyer shall take reasonable remedial measures.

[8] SCR 20:3.3(a)(1) and (3) (effective July 1, 2007) provides that a lawyer shall not knowingly:

(1) make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

. . . .

(3) offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter that the lawyer reasonably believes is false.

13

business or personal account, rather than his client trust account, Voss violated former SCR 20:1.15(a), in effect prior to July 1, 2004 and current SCR 20:1.15(b)(1), in effect as of July 1, 2004.

[COUNT FIVE] By, after July 1, 2004, taking cash withdrawals from his client trust account and by taking cash from deposits to his client trust account, or authorizing others to do so, Voss violated SCR 20:1.15(e)(4)a.[9]

[COUNT SIX] By, after July 9, 2006: (i) failing to maintain a pooled interest-bearing account; (ii) failing to participate in the Interest on Trust Accounts Program; and (iii) by depositing client and third party funds that are nominal in amount and/or intended to be held for a short period of time in a non-interest bearing account, Voss violated former SCR 20:1.15(c)(1),[10] in effect as of July 1, 2004, current SCR 20:1.15(c)(1),[11] in effect as of January 1, 2010, and SCR 13.04.[12]

---

[9] SCR 20:1.15(e)(4)a. provides that "[n]o disbursement of cash shall be made from a trust account or from a deposit to a trust account, and no check shall be made payable to 'Cash.'"

[10] SCR 20:1.15(c)(1) (effective July 1, 2004) provides:

A lawyer who receives client funds shall maintain a pooled interest-bearing demand account for deposit of client or 3rd-party funds that are:

a. nominal in amount or expected to be held for a short period of time; or

b. not deposited in an account or investment under SCR 20:1.15 (c) (2); or

c. not eligible for an account or investment under SCR 20:1.15 (c) (2) because the client is a corporation or organization not permitted by law to maintain such an account or the terms of the account are not consistent with a need to make funds available without delay.

[11] SCR 20:1.15(c)(1) (effective January 1, 2010) provides:

14

[COUNT SEVEN] By, prior to July 1, 2004, failing to maintain complete records of trust account funds

---

A lawyer or law firm who receives client or 3rd-party funds that the lawyer or law firm determines to be nominal in amount or that are expected to be held for a short period of time such that the funds cannot earn income for the benefit of the client or 3rd party in excess of the costs to secure that income, shall maintain a pooled interest-bearing or dividend-paying draft trust account in an IOLTA participating institution.

[12] SCR 13.04 provides:

(1) An attorney shall participate in the program as provided in SCR 20:1.15 unless:

(a) The attorney certifies on the annual trust account statement filed with the state bar that:

1. Based on the attorney's current annual trust account experience and information from the institution in which the attorney deposits trust funds, service charges on the account would equal or exceed any interest generated; or

2. Because of the nature of the attorney's practice, the attorney does not maintain a trust account; or

(b) The board, on its own motion or upon application from an attorney, grants a waiver from participation in the program for good cause.

(2) The board may reimburse an attorney incurring service charges on an account established under SCR 20:1.15 (c) (1) if the charges are reasonably and necessarily related to the attorney's participation in the program.

(3) Refusal or neglect by an attorney to participate in the program, except as provided under sub. (1), constitutes professional misconduct and may be grounds for disciplinary action under the rules governing enforcement of attorneys professional responsibility.

and other property, by, after June 30, 2004 and before July 1, 2007, failing to maintain a compliant transaction register, client ledgers, ledger for account fees and charges, deposit records, monthly statements and reconciliation reports, and by, after June 30, 2007, failing to maintain a compliant transaction register, client ledgers, ledger for account fees and charges, deposit records, disbursement records, monthly statements and reconciliation reports, Voss violated former SCR 20:1.15(e),[13] in effect prior to July 1, 2004,

---

[13] SCR 20:1.15(e) (effective prior to July 1, 2004) provided:

Complete records of trust account funds and other trust property shall be kept by the lawyer and shall be preserved for a period of at least six years after termination of the representation. Complete records shall include: (i) a cash receipts journal, listing the sources and date of each receipt, (ii) a disbursements journal, listing the date and payee of each disbursement, with all disbursements being paid by check, (iii) a subsidiary ledger containing a separate page for each person or company for whom funds have been received in trust, showing the date and amount of each receipt, the date and amount of each disbursement, and any unexpended balance, (iv) a monthly schedule of the subsidiary ledger, indicating the balance of each client's account at the end of each month, (v) a determination of the cash balance (checkbook balance) at the end of each month, taken from the cash receipts and cash disbursement journals and a reconciliation of the cash balance (checkbook balance) with the balance indicated in the bank statement, and (vi) monthly statements, including canceled checks, vouchers or share drafts, and duplicate deposit slips. A record of all property other than cash which is held in trust for clients or third persons, as required by paragraph (a) hereof, shall also be maintained. All trust account records shall be deemed to have public aspects as related to the lawyer's fitness to practice.

16

former SCR 20:1.15(f)(1),[14] in effect between July 1, 2004 and June 30, 2007, and current SCR 20:1.15(f)(1),[15] in effect as of July 1, 2007.

[COUNT EIGHT] By commingling personal funds or funds belonging to the Voss Law Office in his client trust account, Voss violated SCR 20:1.15(b)(3).[16]

[COUNT NINE] By disbursing from his trust account the advanced payments of costs for clients, before their filing fees had been paid to the court, Voss violated SCR 20:1.15(b)(4).[17]

[COUNT TEN] By: (i) holding Frederick J. Voss out as a partner, member, associate or employee of the Voss Law Office; and (ii) allowing Frederick J. Voss to hold himself out as a partner, member, associate or

---

[14] SCR 20:1.15(f)(1) (effective between July 1, 2004 and June 30, 2007) provided that "[c]omplete records of a trust account that is a demand account shall include a transaction register; individual client ledgers; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports . . . ."

[15] SCR 20:1.15(f)(1) (effective July 1, 2007) provides that "[c]omplete records of a trust account that is a demand account shall include a transaction register; individual client ledgers; a ledger for account fees and charges, if law firm funds are held in the account pursuant to sub. (b)(3); deposit records; disbursement records; monthly statements; and reconciliation reports . . . ."

[16] SCR 20:1.15(b)(3) provides that "[n]o funds belonging to the lawyer or law firm, except funds reasonably sufficient to pay monthly account service charges, may be deposited or retained in a trust account."

[17] SCR 20:1.15(b)(4) provides that, "[e]xcept as provided in par. (4m), unearned fees and advanced payments of fees shall be held in trust until earned by the lawyer, and withdrawn pursuant to sub. (g). Funds advanced by a client or 3rd party for payment of costs shall be held in trust until the costs are incurred.

17

employee of the Voss Law Office, Voss violated SCR 20:7.5(d).[18]

[COUNT ELEVEN] By making misrepresentations to OLR during . . . the investigation of this matter, Voss violated SCR 22.03(2) and (6),[19] via SCR 20:8.4(h).[20]

¶26 Attorney Voss filed an answer to the complaint on May 29, 2012. Robert E. Kinney was originally appointed referee

---

[18] SCR 20:7.5(d) provides that "[l]awyers may state or imply that they practice in a partnership or other organization only when that is the fact."

[19] SCR 22.03(2) and (6) provides:

(2) Upon commencing an investigation, the director shall notify the respondent of the matter being investigated unless in the opinion of the director the investigation of the matter requires otherwise. The respondent shall fully and fairly disclose all facts and circumstances pertaining to the alleged misconduct within 20 days after being served by ordinary mail a request for a written response. The director may allow additional time to respond. Following receipt of the response, the director may conduct further investigation and may compel the respondent to answer questions, furnish documents, and present any information deemed relevant to the investigation.

. . . .

(6) In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance.

[20] SCR 20:8.4(h) provides that it is professional misconduct for a lawyer to "fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

in this matter. On October 1, 2012, a motion for substitution of referee was granted and John B. Murphy was appointed referee.

¶27 On May 9, 2013, a stipulation and no contest plea was filed. In the stipulation, Attorney Voss withdrew his answer to the complaint and pled no contest to the 11 counts of misconduct as set forth in the complaint. The parties jointly requested the referee to file a report with this court finding facts based on Attorney Voss's no contest plea and asked the referee to consider the issue of the appropriate sanction.

¶28 The referee filed his findings and recommendation on September 5, 2013. Based on the stipulation and the facts set forth in the OLR's complaint, the referee found that Attorney Voss engaged in the 11 counts of misconduct alleged in complaint.

¶29 As to the appropriate sanction, the referee said that the OLR made a good case for revocation since Attorney Voss has been disciplined previously for trust account offenses and, in spite of that discipline, has persisted in not changing his law office practices. The referee said, "Either Voss is incapable of learning from his mistakes or simply indifferent to what the Court or OLR thinks about how he runs his practice. Whatever the case, strong action is needed to prevent future harm to clients and the legal system." The referee further said that, in addition to the trust account problems, Attorney Voss was willing to mislead the court with misrepresentations and fabrications. The referee went on to say:

19

In spite of all of the above, it should be noted that Voss did, upon request, repay [J.K.'s] estate for the missing funds. Additionally, it appears that Voss did not use these funds for his own personal gain and that [J.K.] did not suffer directly from Voss' misbehavior. Further, Voss ultimately "admitted" his mistake by withdrawing his Answer and entering a no contest plea to the allegations.

¶30 The referee said while he gave the OLR's request for revocation careful consideration, he was not fully persuaded, given the need for progressive discipline, that revocation was required in this case. The referee recommended that Attorney Voss's license to practice law be suspended for a period of one year; that he be ordered to pay additional restitution of $2,077.18 to J.K.'s estate; and that he be assessed the full costs of this proceeding. The referee also recommended that before he is allowed to reinstate his license, Attorney Voss be required to demonstrate that he has in place a proper trust account consistent with supreme court rules.

¶31 The OLR has appealed, arguing that revocation is the appropriate sanction for Attorney Voss's misconduct. In support of its argument, the OLR cites various cases including In re Disciplinary Proceedings Against Krombach, 2005 WI 170, 286 Wis. 2d 589, 707 N.W.2d 146, In re Disciplinary Proceedings Against Conmey, 2005 WI 166, 286 Wis. 2d 514, 706 N.W.2d 633, and In re Disciplinary Proceedings Against Weigel, 2012 WI 124, 345 Wis. 2d 7, 823 N.W.2d 798. The OLR says that similar to the Weigel case, it is not entirely clear here whether Attorney Voss may or may not have misappropriated J.K.'s funds specifically for his own personal use. The OLR says what is clear is that

Attorney Voss systematically, during the time he acted as J.K.'s guardian, robbed Peter to pay Paul by utilizing J.K.'s funds in his trust account to either pay for other clients' bankruptcy fees or potentially pay his own attorney fees or office expenses through the years. The OLR says while Attorney Voss may not have been proven to have engaged in an intentional scheme of misappropriation, his behavior was, at a minimum, reckless.

¶32 The OLR notes that Attorney Voss has been sanctioned by this court on two prior occasions and, as a result of his public reprimand, was ordered to attend trust account school. It says despite his previous discipline, Attorney Voss continued to maintain a lackadaisical attitude about his trust account and failed to maintain adequate trust account records. The OLR argues that progressive discipline, in the form of revocation of Attorney Voss's license, is warranted in this case.

¶33 Attorney Voss argues that revocation is not warranted and that the sanction imposed should be no greater than the one-year suspension recommended by the referee. Attorney Voss admits that he paid some client fees from money in his trust account that should have been attributable to J.K.'s account. He says the amount of money incorrectly reported averaged about $250 a month. He says:

> Rather than characterize the behavior as reckless the Respondent would submit that the behavior was negligent to the extent that a more careful inspection of the accounting system would have eliminated this from happening. It is true that the Respondent should have known what the true amount in the account should be. Unfortunately, that was not the case. . . . The

21

incremental amount of improperly transferring was not sufficient at any time to make the Respondent believe it was improper.

¶34 A referee's findings of fact are affirmed unless clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

¶35 There is no showing that any of the referee's findings of fact are erroneous. Accordingly, we adopt them. We also agree with the referee's conclusions of law that Attorney Voss violated all of the supreme court rules set forth above.

¶36 Revocation of an attorney's license to practice law is the most severe sanction this court can impose, and is reserved for the most egregious cases. While Attorney Voss's misconduct is serious, we do not agree that it rises to the level of warranting revocation. The cases cited by the OLR in support of its argument that revocation is an appropriate sanction are distinguishable. In Conmey, 286 Wis. 2d 514, and Krombach, 286 Wis. 2d 589, the attorneys made payments to themselves out of trust funds. In this case the referee said it did not appear that Attorney Voss used J.K.'s funds for his personal gain. In Weigel, the attorney's trust account ran a deficit ranging from $100,000 to $1,000,000 over a period of many years. 345 Wis. 2d 7, ¶8. The conduct here simply does not rise to that level.

22

¶37 In In Re Disciplinary Proceedings Against Raneda, 2012 WI 42, 340 Wis. 2d 273, 811 N.W.2d 412, this court imposed a one-year suspension for 14 counts of misconduct, the majority of which involved trust account violations. The attorney's misconduct included diverting client funds to his own use. In In Re Disciplinary Proceedings Against Biester, 2013 WI 85, 350 Wis. 2d 707, 838 N.W.2d 79, this court also imposed a one-year suspension for 29 counts of misconduct, including transferring large sums of money from the attorney's client trust account to pay for the attorney's personal debts and office expenses. We find Attorney Voss's situation to be more closely akin to Raneda and Biester than to Weigel, Conmey or Krombach, although because J.K. was a particularly vulnerable client and Attorney Voss's misconduct with respect to his handling of J.K.'s funds went on for a significant period of time, a suspension slightly longer than the one imposed in Raneda and Biester is appropriate.

¶38 Wisconsin does adhere to a system of progressive discipline. Attorney Voss has been licensed to practice law in Wisconsin for nearly four decades. His disciplinary history consists of one private reprimand and one public reprimand. After careful consideration, we conclude that an eighteen-month suspension of his license to practice law is an appropriate sanction. We agree with the referee that Attorney Voss should be required to pay additional restitution in the amount of $2,077.18 to J.K.'s estate and that he be assessed the full costs of this proceeding. We further agree with the referee

23

that, as a condition of the reinstatement of his license, Attorney Voss be required to demonstrate that he has in place a proper trust account consistent with supreme court rules.

¶39  IT IS ORDERED that the license of Richard W. Voss to practice law in Wisconsin is suspended for a period of eighteen months, effective August 22, 2014.

¶40  IT IS FURTHER ORDERED that Richard W. Voss be required to pay restitution in the amount of $2,077.18 to the estate of J.K.

¶41  IT IS FURTHER ORDERED that within 60 days of the date of this order, Richard W. Voss shall pay to the Office of Lawyer Regulation the costs of this proceeding.

¶42  IT IS FURTHER ORDERED that the restitution specified above is to be completed prior to paying costs to the Office of Lawyer Regulation.

¶43  IT IS FURTHER ORDERED that compliance with all conditions of this order is required for reinstatement.  See SCR 22.29(4)(c).

¶44  IT IS FURTHER ORDERED that, as a condition of the reinstatement of his license to practice law in Wisconsin, Richard W. Voss be required to demonstrate that he has in place a proper trust account consistent with supreme court rules.

¶45  IT IS FURTHER ORDERED that Richard W. Voss shall comply with the provisions of SCR 22.26 concerning the duties of an attorney whose license to practice law has been suspended.