In re Law Examination of 1926, 191 Wis. 359.

## In re Law Examination of 1926.

### *Filed November 9, 1926.*

DOERFLER, J. While the Board of Law Examiners was conducting its annual examination of applicants for admission to the bar in July, 1926, an anonymous letter of a member of the bar was received which charged cheating "on a wholesale scale" by means of an elaborately prepared scheme. A similar letter was also sent to and received by the Capital Times, a newspaper published in Madison, Wisconsin. On July 24, 1926, an article was published in said newspaper in which, among other things, cheating at said examination, pursuant to a prearranged scheme, was charged. In the issue of the paper on said day there was also published a letter written by one of the candidates, which contained the assertion that a clique of candidates organized

and trained to perfection was conducting a general scheme for the purpose of pursuing unfair and dishonorable methods.

The foregoing matters having been called to the attention of the court, one E. J. Reynolds, a member of the Dane county bar, was appointed as referee to conduct an examination of the charges so made and to report his findings thereon to this court. One Philip F. La Follette, likewise a member of said bar, was directed to conduct the examination of witnesses. After a thorough and searching investigation the referee presented his report, which embraced findings of fact based upon the evidence adduced at the investigation, and this report, together with the findings and the evidence, was transmitted by the order of this court to the Board of Law Examiners, who made a careful review of the report and findings and evidence, and thereupon transmitted the same to this court, in order that such action might be taken as the court might deem advisable in the premises.

In substance, the referee and the law examiners found that the charges contained in the letters above referred to and in the article in the Capital Times, that wholesale cheating occurred at said examination, and that groups or cliques of students had come to the examination with a well-prepared and worked-out scheme to cheat, by the aid of signals and by mutual aid and assistance, were wholly unsubstantiated by the proof, and that such charges were in fact unfounded. Upon reading the reports of the referee and the examiners, and after a careful review of the testimony taken before the referee, we are satisfied that the conclusions arrived at are correct, and we therefore approve the same. It is to be deplored that such unwarranted charges were given such undue publicity.

It appears, however, from the reports of the referee and the examiners that unfair and dishonorable methods were resorted to by a number of candidates; that communications

In re Law Examination of 1926, 191 Wis. 359.

by word of mouth and by notes were passed, and that assistance was both extended and received; that a striking similarity with respect to the language used in the answers appeared upon the examination papers of a number of candidates; and that such similarity afforded convincing proof of dishonorable methods pursued. A number of candidates who were sworn as witnesses, under oath denied that they had received or extended aid, and upon being recalled admitted the falsity of their former testimony and confessed to both receiving and giving aid. Many of the implicated candidates failed in the examination, while others attained credits which would have entitled them to a certificate had it not been for the evidence implicating them in the manner aforesaid.

The law is an ancient and honorable profession. An attorney at law is an officer of the court, and an inherent part of our judicial system. In the practice of the profession he is charged with a dual function,—first, to serve the public in aid of the administration of justice, and second, to promote the interests of his client. The function first named is the primary function, and the latter in all instances must be subservient to the former, and wherever the interests of his client are inimical to the public interests, the private interest must yield to that of the public. It will thus be noted that an attorney at law is charged with a delicate but important mission in all of the various transactions in which he is engaged in the practice of his profession. He is required to take a solemn oath before he is admitted. This form of oath is the result of years of painstaking effort on the part of the highest legal minds in the country to embrace therein, from an ethical standpoint, all of the essential elements of an ideal lawyer. This form of oath was promulgated and approved by the American Bar Association, and substantially adopted by the legislature of this state and incorporated into the statutes. An examination.

of this oath will reveal that an applicant for admission to the bar must first either swear or affirm that he will support the constitution of the United States and that of the state of Wisconsin, and that he will obey the laws, both federal and state. This clearly indicates the legislative intent to charge an attorney with a public function which rises superior to and above that which he assumes towards his client. This oath merely incorporates in a simple and concrete form the obligations of an attorney as they existed before the enactment of the statute, and in effect is declaratory and not derogatory of the common law, notwithstanding divergent views entertained upon this subject by some members of the profession. An attorney occupies a fiduciary relationship towards his client. It is one of implicit confidence and of trust; and in harmony with the vastly increasing complexity of our industrial and commercial interests, such trust and confidence have maintained an equal pace, so that specialization in the various fields of the profession has become necessary and common, resulting, however, in a broader and enlarged dependence of the client upon the lawyer. There is no field of human activity which requires a fuller realization with respect to a fiduciary relationship than that which exists between the lawyer and his client. Therefore, the law requires of a candidate for admission to the bar not only knowledge and intelligence, but also a high moral character for honesty and integrity, and without honesty and integrity the primary purpose of an attorney at law, by which he is charged to aid in the administration of justice, is liable to be frustrated. It can also be truthfully said that there exists nowhere greater temptations to deviate from the straight and narrow path than in the multiplicity of circumstances that arise in the practice of the profession. For these reasons the wisdom of requiring an applicant for admission to the bar to possess a high moral standard therefore becomes clearly apparent, and the Board of Law Ex-

aminers as an arm of the court is required to cause a minute examination to be made of the moral standard of each candidate for admission to practice. The investigation pursued in Wisconsin is superficial when it is compared to the minute and detailed investigation conducted by the examination of some of the other states. There, a large fund is provided for investigation purposes, and the examiners do not rely merely upon the statements in writing of a candidate, or of his supporting proof by affidavits or other supporting documentary evidence, but an investigating board makes a detailed, minute, personal investigation of the prior history of the applicant, and the report of such investigators largely determines the action of the Board of Examiners. New York particularly has established a laudable precedent in this respect, and the hope is entertained that some day in the very near future the legislature of our state may come to a realization that money appropriated and expended for this purpose will serve a highly praiseworthy, necessary, and desired purpose.

A candidate who applies for a certificate under the statutes of our state must have arrived at majority, which is a period in his life where character traits are ordinarily fully formed, and if he is then deficient in character as to integrity and honesty, his shortcomings are liable to prevail during the remainder of his life. The harm which must necessarily result from admitting one so deficient into the profession is so great as to be incalculable, and the baneful results are prone not only to manifest themselves by a disregard of the interests of clients, but may be reflected in the opinion which the public at large maintains towards the entire profession. An attorney, as has heretofore been said, being an inherent part of the judicial system of our country, which is one of the three departments of our democratic system of government, has it within his power to augment or to detract from the respect which the public has for the

very government itself, and no system of government can in the long run be successfully maintained unless it is so conducted as to command the approval of the great masses of the citizenship.

It needs no further argument, therefore, to arrive at the conclusion that the highest degree of scrutiny must be exercised as to the moral character of a candidate who presents himself for admission to the bar. The evil must, if possible, be successfully met at its very source, and prevented; for after a lawyer has once been admitted and has pursued his profession and has established himself therein, a far more difficult situation is presented to the court when proceedings are instituted for disbarment and for the recalling and annulment of his license.

Notwithstanding the views thus expressed, the unfortunate situation presented by the reports aforesaid enlists a high degree of sympathy for the unfortunate candidates whose deficiency in moral character has thus been established, and we entertain the sincere and cherished hope that they will come to a full realization of their shortcomings and will struggle with might and main to establish higher moral standards of character.

This opinion is not directed against individuals, but against false principles, with a view not only that those directly involved in this examination may profit thereby, but that it may bring home to those who may present themselves in the future the necessity and importance of coming before the Examining Board with a full realization of what this court expects from them. A candidate who succeeds by unfair methods in obtaining his certificate, while he may derive a material benefit, is nevertheless a great loser, for he forfeits a thing of the highest value, essential to the well-being of all citizens, viz. the possession of his self-respect, and without self-respect he cannot command the respect of others; and in the final analysis, when a period of life comes

which must come to all, if a lawyer has deported himself honorably and faithfully, even though he has failed in attaining great prominence in his profession and has failed in accumulating large material means, he nevertheless has earned the respect of his fellow citizens and has preserved his own self-respect.

Owing to changes and reforms which may develop in the course of time with respect to the candidates involved in this investigation, and for the reason that we may be confronted with individual cases coming before this court in the future, we do not feel justified in taking definite action at this time in regard to the findings of the referee and of the board concerning such individual candidates. Whether or not certificates of admission shall be granted hereafter to those candidates when they present themselves rests largely in the sound discretion of the Board of Law Examiners. Each candidate will be judged largely on his merits. Sincere manifestations of reform may operate as a palliative in individual cases, and this is in accordance with the proper practice as it has been declared by this court in similar cases.

We commend highly the members of the board, the referee, Mr. Reynolds, and the attorney appointed, Mr. La Follette, for the unselfish devotion in the aid and assistance rendered during the course of the investigation; and while convinced that a deplorable situation has been disclosed, the results of this investigation will prove a powerful check to such irregularities in the future, with the result that the high standards of the profession may receive a broader and more thorough recognition which will be reflected by public opinion towards the ethical standard of the bar.