# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2016AP1897-D |
| COMPLETE TITLE: | In the Matter of Disciplinary Proceedings Against Thad W. Jelinske, Attorney at Law:<br><br>Office of Lawyer Regulation,<br>       Complainant,<br>   v.<br>Thad W. Jelinske,<br>       Respondent. |

DISCIPLINARY PROCEEDINGS AGAINST JELINSKE

| | |
|---|---|
| OPINION FILED: | September 12, 2018 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | |

| | |
|---|---|
| SOURCE OF APPEAL: | |
|   COURT: | |
|   COUNTY: | |
|   JUDGE: | |

| | |
|---|---|
| JUSTICES: | |
|   CONCURRED: | |
|   DISSENTED: | |
|   NOT PARTICIPATING: | |

ATTORNEYS:

**2018 WI 94**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2016AP1897-D

STATE OF WISCONSIN : IN SUPREME COURT

**In the Matter of Disciplinary Proceedings Against Thad W. Jelinske, Attorney at Law:**

**Office of Lawyer Regulation,**

   **Complainant,**

 **v.**

**Thad W. Jelinske,**

   **Respondent.**

**FILED**

**SEP 12, 2018**

Sheila T. Reiff
Clerk of Supreme Court

ATTORNEY disciplinary proceeding. *Attorney's license suspended.*

¶1 PER CURIAM. We review the report and recommendation of Referee Jonathan V. Goodman, which approves a stipulation between Attorney Thad W. Jelinske and the Office of Lawyer Regulation (OLR) by which Attorney Jelinske pled no contest to 15 of the 23 allegations of misconduct in the OLR's complaint. Consistent with the parties' stipulation, the referee recommended that this court suspend Attorney Jelinske's Wisconsin law license for 18 months, retroactive to October 16,

2017. The referee further recommended that Attorney Jelinske be assessed the full costs of the proceeding, which are $13,032.92 as of August 13, 2018. The OLR does not seek the payment of restitution.

¶2 Because no appeal has been filed, we review this matter pursuant to SCR 22.17(2)[1]. We agree with the parties' stipulation and the referee's determination that the allegations of the disciplinary complaint and the information contained within the over two-dozen exhibits to the parties' stipulation provide an adequate factual basis for Attorney Jelinske's no contest pleas. We also agree with the referee's determination that Attorney Jelinske engaged in numerous forms of professional misconduct, and that the seriousness of this misconduct warrants an 18-month suspension of his law license. We part ways with the referee in holding that, under the circumstances present here, the suspension of Attorney Jelinske's law license should not be backdated to October 16, 2017, but rather should be made effective as of the date of this decision. We impose full costs. No restitution was sought and none is ordered.

---

[1] SCR 22.17(2) provides:

> If no appeal is filed timely, the supreme court shall review the referee's report; adopt, reject or modify the referee's findings and conclusions or remand the matter to the referee for additional findings; and determine and impose appropriate discipline. The court, on its own motion, may order the parties to file briefs in the matter.

¶3 The OLR complaint alleged, and the referee found based on the parties' stipulation,[2] the following facts.

¶4 Attorney Jelinske was admitted to practice law in Wisconsin in 1986. At all relevant times, he was a partner and head of the commercial litigation department at a law firm in Milwaukee. He has no disciplinary history.

¶5 In July 2001, Attorney Jelinske's firm prepared a revocable trust and pour-over will for R.S.M., who had been a client of the firm for many years.

¶6 R.S.M. died on August 1, 2011. R.S.M.'s will named Attorney Jelinske as the personal representative of the estate and successor trustee, and named Attorney Jelinske's law partner as an alternative personal representative and trustee.

¶7 Attorney Jelinske commenced informal probate proceedings in Waukesha County Circuit Court, despite having no experience in probating estates. The court appointed Attorney Jelinske as the personal representative of the estate, and the will was admitted to probate.

¶8 The estate was insolvent. R.S.M. died owing over $3,000,000 to one particular bank alone.

¶9 During the probate proceedings, Attorney Jelinske wrote checks from the estate account for personal expenditures for such things as shoes, shoe repairs, clothing, and credit card expenses.

---

[2] See n.4, infra.

3

¶10 During the probate proceedings, Attorney Jelinske and the firm arranged for the firm to loan the estate $238,755.43 in order to pay off a mortgage on R.S.M.'s home, as the mortgage was in danger of foreclosure. Attorney Jelinske, on behalf of the estate, executed a promissory note in favor of the firm with an interest rate of eight percent. The terms of the note included a "success fee" to the firm of one-third of the net proceeds from the sale of the home. Attorney Jelinske arranged for the sale of the home for $395,000. From the proceeds, Attorney Jelinske repaid the firm the amount of the loan, plus a $42,173.22 "success fee," plus $1,117.42 in accrued interest, leaving net proceeds to the estate of $84,348.44. Attorney Jelinske did not obtain approval from the court for the transactions involving the home.

¶11 R.S.M.'s estate included an interest in a hair salon. The salon was in default on a commercial lease. Attorney Jelinske arranged for a sale of the salon. He double-billed the estate in the amount of $4,700 for legal services related to this sale. He also converted to his own use $834.61 of funds from an estate bank account that he had created to manage payments to R.S.M.'s business interests, including the salon. This misappropriation created a negative balance in the estate account and triggered a non-sufficient funds fee, which he covered by transferring funds from another account associated with R.S.M.'s estate.

¶12 Attorney Jelinske also converted to his own use two payments—$573.61 and $1,565.52—from two separate life

4

insurance policies held by R.S.M. Attorney Jelinske deposited the $573.61 insurance check into the estate account and, using a counter check which he endorsed as the personal representative, withdrew that same amount in cash. Attorney Jelinske endorsed the $1,565.52 insurance check as the personal representative and deposited the funds directly into his own checking account. Attorney Jelinske did not maintain complete and accurate records regarding these disbursements.

¶13 Contrary to Wis. Stat. § 857.05(3) (2013-14),[3] Attorney Jelinske billed R.S.M.'s estate for both personal representative fees and attorney fees even though R.S.M.'s will did not authorize dual fees. By September 2013, Attorney Jelinske had billed the estate approximately $167,463 in legal fees. After payment to Attorney Jelinske and the firm for legal fees, only $174,885.58 remained available to distribute to creditors.

---

[3] All references to the Wisconsin Statutes are to the 2013-14 version unless otherwise noted.

Wis. Stat. § 857.05(3) provides:

> ATTORNEY FEES AND COMMISSIONS. If the personal representative or any law firm with which the personal representative is associated also serves as attorney for the decedent's estate, the court may allow him or her either executor's commissions, (including sums for any extraordinary services as set forth in sub. (2)) or attorney fees. The court may allow both executor's commissions and attorney fees, and shall allow both if the will of the decedent authorizes the payments to be made.

5

¶14  In October 2013, Attorney Jelinske filed an inventory in the probate proceedings that contained several misrepresentations.  The inventory did not accurately account for the life insurance funds that he had converted to his own use; it omitted the net proceeds from the sale of the hair salon; and it failed to disclose that he had double-billed the estate for his work regarding the sale of the salon.

¶15  In June 2014, Attorney Jelinske filed an estate account in the probate proceedings that contained several misrepresentations.  He classified as "personal representative fees" the $834.61 amount that he had converted from the estate bank account used to manage payments to R.S.M.'s business interests.  He similarly classified as "personal representative fees" the $1,565.52 distribution from R.S.M.'s life insurance policy that he deposited directly into his own checking account.  Attorney Jelinske also omitted the fact that he had double-billed the estate for his work in handling the hair salon sale.

¶16  The main creditor bank of the estate eventually began litigation against Attorney Jelinske and his law firm.  At a deposition, Attorney Jelinske falsely denied that certain checks he wrote from the estate account were for personal expenses.  He also falsely denied knowing about both the existence of the estate bank account that he had created to manage payments to R.S.M.'s business interests, and the purpose of the fund transfer that he made to cover the negative balance in that account caused by his misappropriation of funds.

6

¶17 During an ensuing trial to the circuit court, Attorney Jelinske falsely testified about the nature of certain expenditures he made from estate funds. He also claimed that he did not recall seeing the distribution check from R.S.M.'s life insurance policy that he had deposited into his own checking account.

¶18 At the conclusion of the trial, the court removed Attorney Jelinske as personal representative and found that he had violated his fiduciary obligation to the estate by converting estate assets to his own use and by arranging for the roughly $42,000 "success fee" in connection with his law firm's sale of R.S.M.'s home.

¶19 After the trial, the parties litigated the creditor bank's entitlement to attorney's fees and costs. According to a hearing transcript attached to the parties' stipulation,[4] the circuit court described R.S.M.'s estate as having become "mired in a morass of self-dealing ethical lapses" and "conduct amounting to conversion." The circuit court found that Attorney Jelinske "was not truthful in portions of his testimony," and that he made a "continued effort to evade responsibility." The circuit court described Attorney Jelinske's conduct throughout the administration of the estate and the subsequent trial as

---

[4] We read the referee's report, which approves the parties' stipulation, as having implicitly incorporated the information contained in the exhibits that the parties attached to the stipulation to help serve as the factual basis for Attorney Jelinske's no contest pleas.

"shocking" and "reek[ing] of bad faith" and "delinquent dishonesty."  In a subsequent written order, also attached to the parties' stipulation, the circuit court wrote that Attorney Jelinske "engaged in shocking bad faith conduct including obstruction of discovery, deliberate misrepresentation, self[-] dealing, unethical conduct, conversion, false statements[,] and less than truthful statements to the Court."

¶20  During the ensuing OLR investigation against Attorney Jelinske, Attorney Jelinske made various misrepresentations to the OLR.

¶21  The parties stipulated and the referee concluded that Attorney Jelinske's conduct, described above, amounted to the following forms of professional misconduct:

- By paying personal expenses out of fiduciary funds and failing to keep all of the estate funds in trust, Attorney Jelinske violated former SCR 20:1.15(j)(1)[5] (Count 1).

---

[5] Effective July 1, 2016, substantial changes were made to Supreme Court Rule 20:1.15, the "trust account rule." See S. Ct. Order 14-07, (issued Apr. 4, 2016, eff. July 1, 2016).  Because the conduct underlying this case arose prior to July 1, 2016, unless otherwise indicated, all references to the supreme court rules will be to those in effect prior to July 1, 2016.

Former SCR 20:1.15(j)(1) provided:

A lawyer shall hold in trust, separate from the lawyer's own funds or property, those funds or that property of clients or 3rd parties that are in the lawyer's possession when acting in a fiduciary capacity that directly arises in the course of, or as

(continued)

8

- By, on behalf of the estate, entering into a loan agreement with his law firm that was a prohibited transaction under Wis. Stat. § 860.13,[6] Attorney Jelinske violated SCR 20:8.4(f)[7] (Count 2).

- By double-billing the estate for certain legal work, Attorney Jelinske violated SCR 20:1.5(a)[8] (Count 6).

---

a result of, a lawyer-client relationship or by appointment of a court.

[6] Wis. Stat. § 860.13 provides:

**Who not to be purchaser, mortgagee or lessee without court approval.** The personal representative may not be interested as a purchaser, mortgagee, or lessee of any property in the estate unless the purchase, mortgage, or lease is made with the written consent of the persons interested and of the guardian ad litem for minors and individuals adjudicated incompetent or with the approval of the court after petition and hearing on notice given under s. 879.03 to all persons interested, or unless the will of the decedent specifically authorizes the personal representative to be interested as a purchaser, mortgagee, or lessee.

[7] SCR 20:8.4(f) provides: "It is professional misconduct for a lawyer to violate a statute, supreme court rule, supreme court order or supreme court decision regulating the conduct of lawyers."

[8] SCR 20:1.5(a) provides:

A lawyer shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses. The factors to be considered in determining the reasonableness of a fee include the following:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(continued)

9

- By misappropriating funds held in fiduciary accounts and misappropriating insurance proceeds belonging to the estate, Attorney Jelinske violated former SCR 20:1.15(j)(1) (Counts 8, 10, 11).

- By failing to maintain complete and accurate records of disbursements involving life insurance proceeds and other funds belonging to fiduciary accounts, Attorney Jelinske violated former SCR 20:1.15(j)(5)[9] (Count 9).

---

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

[9] Former SCR 20:1.15(j)(5) provided:

For each fiduciary account, the lawyer shall retain records of receipts and disbursements as necessary to document the transactions. The lawyer shall maintain all of the following:

a. all monthly or other periodic statements provided by the financial institution to the lawyer or law firm; and

(continued)

10

- By disbursing cash out of funds held in a fiduciary account, Jelinske violated former SCR 20:1.15(j)(3)a.[10] (Count 12).

- By converting estate assets to his own use and denying having done so in his deposition, Attorney Jelinske violated SCR 20:8.4(c)[11] (Counts 13 and 20).

- By paying himself both a personal representative's fee and attorney's fees, Attorney Jelinske violated SCR 20:8.4(f) (Count 14).

- By knowingly making false statements of fact in sworn estate accountings filed with the court, Attorney Jelinske violated SCR 20:3.3(a)(1)[12] (Counts 15 and 17).

---

b. all transaction records, including canceled or imaged checks, passbooks, records of electronic fund transactions, duplicates of any instrument issued by the financial institution from funds held in the account, duplicate deposit slips identifying the source of any deposit, and duplicate withdrawal slips identifying the purpose of any withdrawal.

[10] Former SCR 20:1.15(j)(3)a. provided: "No disbursement of cash shall be made from a fiduciary account or from a deposit to a fiduciary account, and no check shall be made payable to 'Cash.'"

[11] SCR 20:8.4(c) provides: "It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation."

[12] SCR 20:3.3(a)(1) provides: "A lawyer shall not knowingly make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer."

- By testifying falsely in court about his use of estate funds for his own personal expenses, Attorney Jelinske violated SCR 20:3.3(a)(3)[13] (Count 21).

- By making false representations to the OLR in connection with the grievance investigation, Attorney Jelinske violated SCR 22.03(6)[14] as enforced via SCR 20:8.4(h)[15] (Count 23).

¶22 On the basis of this professional misconduct, the parties stipulated to an 18-month suspension of Attorney Jelinske's license, retroactive to October 16, 2017. The referee adopted that stipulation as his recommendation to the

---

[13] SCR 20:3.3(a)(3) provides:

A lawyer shall not knowingly offer evidence that the lawyer knows to be false. If a lawyer, the lawyer's client, or a witness called by the lawyer, has offered material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal. A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter that the lawyer reasonably believes is false.

[14] SCR 22.03(6) provides: "In the course of the investigation, the respondent's wilful failure to provide relevant information, to answer questions fully, or to furnish documents and the respondent's misrepresentation in a disclosure are misconduct, regardless of the merits of the matters asserted in the grievance."

[15] SCR 20:8.4(h) provides: "It is professional misconduct for a lawyer to fail to cooperate in the investigation of a grievance filed with the office of lawyer regulation as required by SCR 21.15(4), SCR 22.001(9)(b), SCR 22.03(2), SCR 22.03(6), or SCR 22.04(1)."

court. He stated in his report that an 18-month suspension is justified by precedent; namely, In re Disciplinary Proceedings Against Meisel, 2017 WI 40, 374 Wis. 2d 655, 893 N.W.2d 558 (18-month suspension for 15 counts of stipulated misconduct, which included converting approximately $175,000 from two estates and two guardianship proceedings and engaging in misrepresentation; mitigating factors included attorney's serious medical condition and other personal and financial issues, as well as attorney's lack of prior discipline); In re Disciplinary Proceedings Against Voss, 2014 WI 75, 356 Wis. 2d 382, 850 N.W.2d 190 (18-month suspension for 11 counts of stipulated misconduct, which included converting over $48,000 of client's funds and engaging in misrepresentation; attorney's disciplinary history consisted of one private reprimand and one public reprimand); In re Disciplinary Proceedings Against Losby, 2008 WI 8, 306 Wis. 2d 303, 743 N.W.2d 819 (18-month suspension for 10 counts of misconduct arising out of work in three estate matters, including failing to act with due diligence, taking funds to which attorney was not entitled, and engaging in misrepresentation; attorney had no prior discipline).

¶23 A referee's findings of fact are affirmed unless they are clearly erroneous. Conclusions of law are reviewed de novo. See In re Disciplinary Proceedings Against Eisenberg, 2004 WI 14, ¶5, 269 Wis. 2d 43, 675 N.W.2d 747. The court may impose whatever sanction it sees fit regardless of the referee's recommendation. See In re Disciplinary Proceedings Against Widule, 2003 WI 34, ¶44, 261 Wis. 2d 45, 660 N.W.2d 686.

13

¶24 After careful review of the matter, we conclude that the record supports the referee's findings of fact. In particular, we conclude that the admitted allegations of the complaint and the over two-dozen exhibits attached to parties' stipulation provide an ample factual basis for the referee's findings. We therefore adopt them.

¶25 We further conclude that the record supports the referee's legal conclusions that Attorney Jelinske engaged in multiple counts of misconduct. We therefore adopt them.

¶26 Having accepted the referee's findings of fact and conclusions of law, we turn to the appropriate discipline for Attorney Jelinske's misconduct. While no two disciplinary cases are identical, we agree with the referee that our decisions in Meisel, Voss, and Losby support the referee's recommendation for an 18-month suspension. Like Attorney Jelinske, the respondent attorneys in those cases mishandled considerable sums of money and engaged in various forms of misrepresentation to conceal their behavior. Also like Attorney Jelinske, the respondent attorneys in those cases had never before been suspended from legal practice, yet they received lengthy, 18-month suspensions for their serious misconduct. The facts here easily justify such a suspension.

¶27 Indeed, an 18-month suspension, on these facts, is modest——particularly given the pointedly critical circuit court findings regarding Attorney Jelinske's conduct during the probate proceedings and related litigation. If Attorney Jelinske had been previously disciplined, a longer suspension

14

would be necessary. We remind Attorney Jelinske that the court may impose progressively severe sanctions when an attorney engages in repeated misconduct. We impose the sanction to which the parties stipulated with the expectation that Attorney Jelinske will not commit future misconduct subjecting him to additional discipline.

¶28 However, we part ways with the parties and the referee in holding that Attorney Jelinske's license suspension should be prospective, not retroactive. The parties stipulated, and the referee agreed, that Attorney Jelinske's 18-month suspension should be backdated to nearly a year before the issuance of this decision, to October 16, 2017——the date when, according to the referee, Attorney Jelinske "resigned from his law firm." We disagree.

¶29 The parties' stipulation provides additional, important information regarding this proposed retroactive date for the commencement of the suspension, as well as the circumstances surrounding Attorney Jelinske's resignation from his law firm. According to the exhibits attached to the parties' stipulation, almost exactly one year before the proposed retroactive date, on October 19, 2016, Attorney Jelinske pled no contest to three misdemeanor counts of theft related to his work on the R.S.M. estate. The circuit court imposed and stayed a sentence of five months of jail time and placed Attorney Jelinske on probation for 18 months. The circuit court ordered as a condition of probation that Attorney Jelinske not act in a fiduciary capacity on behalf of anyone.

15

Before imposing this condition, the circuit court explained that attorneys are "held to a higher standard" because "they're in a position of trust. They act as fiduciaries for other people." After imposing this condition, the circuit court explained that Attorney Jelinske "can't be trusted with" acting in a fiduciary capacity. "You have to earn your trust back," the court said.

¶30 Almost one year later, at a hearing on October 16, 2017 (the proposed retroactive date), the circuit court apparently[16] noted that Attorney Jelinske had been practicing law notwithstanding his probation condition prohibiting him from acting in a fiduciary capacity on behalf of anyone. The circuit court scheduled a November 21, 2017 hearing to discuss this fact.[17] At that hearing, the circuit court stated that it was "very shocked" to learn that Attorney Jelinske had been practicing law notwithstanding his probation condition prohibiting him from acting in a fiduciary capacity on behalf of anyone. The court rejected Attorney Jelinske's attempted justification for his post-sentencing work as an attorney: that this probation condition meant only that he could not serve as a personal representative or as a trustee, or hold client funds. The circuit court stated that its probation condition clearly prohibited him from acting as an attorney during the course of

_____

[16] We say "apparently" because the parties failed to include a transcript of the October 16, 2017 hearing with their exhibits to their stipulation.

[17] The parties included a transcript of the November 21, 2017 hearing with their exhibits to the stipulation.

his probation, and the court extended Attorney Jelinske's probation by one year. The court noted that it was sufficiently troubled by Attorney Jelinske's conduct that it had considered giving him additional jail time as a condition of probation, but it ultimately declined to do so.

¶31 Given these facts, we cannot endorse the parties' and the referee's recommendation that Attorney Jelinske's 18-month suspension should be backdated almost a year, to October 2017. We have held that a retroactive suspension is generally not favored in the absence of some compelling circumstance that mitigates the severity of the discipline required; e.g., where the recommended suspension arises out of the same set of circumstances that prompted an earlier suspension. See In re Disciplinary Proceedings Against Schoenecker, 2016 WI 27, ¶¶16-17, 368 Wis. 2d 57, 878 N.W.2d 163; In re Disciplinary Proceedings Against Brown-Perry, 2003 WI 151, ¶15, 267 Wis. 2d 184, 672 N.W.2d 287. No such compelling circumstances are present here. Having been barred from acting as a fiduciary as part of his October 2016 sentencing, a wide span of cases should have made clear to Attorney Jelinske that he could not practice law during his probationary term. See, e.g., Sands v. Menard, Inc., 2010 WI 96, ¶53, 328 Wis. 2d 647, 787 N.W.2d 384 ("Attorneys owe a fiduciary duty of loyalty to their clients."); In re Law Examination of 1926, 191 Wis. 359, 362, 210 N.W. 710 (1926) ("An attorney occupies a fiduciary relationship towards his client."). Yet Attorney Jelinske continued to practice law during his probationary term, stopping only after having drawn

17

the ire of the circuit court. We refuse to classify Attorney Jelinske's belated compliance with the terms of his criminal sentence as a compelling circumstance that justifies leniency sufficient to permit him to petition for reinstatement of his law license not long after the issuance of this decision. See SCR 22.29(1) (attorney suspended for a definite period of six months or more is eligible to file a reinstatement petition three months before the end of the suspension period).

¶32 We turn next to the issue of costs. Our general practice is to impose full costs on attorneys who are found to have committed misconduct. See SCR 22.24(1m). Attorney Jelinske has not claimed that there are reasons to depart from that practice in this matter, and we have not found any reason to do so. We therefore impose full costs, which, according to the OLR, total $13,032.92.

¶33 Finally, we turn to the issue of restitution. The OLR has not sought restitution, explaining that doing so is unnecessary because all restitution issues were addressed in R.S.M.'s estate proceeding. We agree with the OLR's reasoning. No restitution is ordered.

¶34 IT IS ORDERED that the license of Thad W. Jelinske to practice law in Wisconsin is suspended for a period of 18 months, effective the date of this decision.

¶35 IT IS FURTHER ORDERED that within 60 days of the date of this order, Thad W. Jelinske shall pay to the Office of Lawyer Regulation the costs of this proceeding, which are $13,032.92.

¶36 IT IS FURTHER ORDERED that Thad W. Jelinske shall comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶37 IT IS FURTHER ORDERED that compliance with all conditions with this order is required for reinstatement.  See SCR 22.28(3).